*Decision will be entered under Rule 50.*

ESTATE OF B. W. CADWALLADER, DECEASED, ROSE M. CADWALLADER, EXECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ROSE M. CADWALLADER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 798, 803. Promulgated August 19, 1949.

*Clark J. Milliron, Esq.*, for the petitioners.
*Robert H. Kinderman, Esq.*, for the respondent.

## OPINION.

LeMire, *Judge*: The petitioner's first contention is that the assessment and collection of any income tax due on the income of the conjugal partnership of the decedent and the petitioner is barred by the provisions of section 695 of the Code of Civil Procedure of the Philippine Islands. This contention is founded upon the respondent's failure to file a claim for unpaid income taxes against the decedent's estate in the Court of First Instance in Manila, P. I., when proceedings were had therein for the administration of the estate.

Section 695 of the Code of Civil Procedure of the Philippine Islands, an act of the Philippine Legislature under authority of the Congress of the United States, provides that:

Sec. 695. *Claims Not Presented Barred.*—A person having a claim against a deceased person proper to be allowed by the committee, who does not, after publication of the required notice, exhibit his claim to the committee as provided in this chapter, shall be barred from recovering such demand or from pleading the same in offset to any action, except as hereinafter provided.

Petitioner argues that this section of the Code of Civil Procedure of the Philippine Islands is, in fact, an act of the Congress of the United States of a special nature, and that it takes precedence over later acts of legislation of a general nature, in the absence of express repeal or modification in later acts of Congress. Petitioner's argument is based on the premise that the Philippine Code of Civil Procedure was never repealed or annulled, although Congress reserved the power to do so. 48 U. S. C. A. 1054. However, legislation of the Philippine Legislature passed within the general legislative power delegated to it by Congress, 48 U. S. C. A. 1041, is not equivalent to an act of Congress merely because Congress failed to exercise its power to annul or repeal the legislation. *Springer* v. *Government of the Philippine Islands*, 277 U. S. 189. The power of the Philippine Legislature and the force of its enactments depend upon the intent of the original delegation of power to it by Congress. *Berger* v. *Chase National Bank*, 105 Fed. (2d) 1001; affd., 309 U. S. 632. The intent of Congress to delegate general legislative power to the Philippine Legislature to regulate the natural internal affairs of the Islands is apparent from the Jones Act, or Autonomy Act, of 1902, 48 U. S. C. A. 1001, wherein Congress expressed its intent to place in the hands of the people of the Philippines "as large a control of their domestic affairs as can be given them without, in the meantime, impairing the exercise of the rights of sovereignty by the people of the United States." There was clearly no delegation of power to the Philippine Legislature to enact any legislation in contravention of any act of Congress itself. Certainly, there was no delegation of power to enact special legislation destroying the obligation of taxpayers to pay taxes under the internal revenue laws of the United States.

We conclude that section 695 of the Philippine Code of Civil Procedure can not operate as a bar to the assessment and collection of income taxes due under the revenue acts of the United States, and that it does not bar the assessment and collection of the deficiencies herein determined by the respondent.

Petitioner then contends that the assessment and collection of the deficiencies here involved are barred because the issues in this proceeding were finally determined by the Board of Tax Appeals in *Estate of Brooke W. Cadwallader, supra,* and affirmed by the Circuit Court of Appeals for the Ninth Circuit, and the judgment in that action is *res judicata* as to the determination of the issues in this proceeding.

The judicial doctrine of *res judicata* was created by the courts to prevent repetitious litigation by the same parties upon the same cause of action after the issues had once been decided on the merits by a court of competent jurisdiction. When final judgment has been entered on the merits in a cause of action, the parties are thereafter bound as to all matters offered or which could have been offered to sustain the claim or demand upon which the cause of action was founded. However, the parties are free to litigate in a later action points which were not in issue in the first proceeding, even though they might have been tendered and decided at that time. *Commissioner* v. *Sunnen,* 333 U. S. 591.

In these proceedings the Federal tax involved is the income tax, and not the estate tax as in the prior proceeding; different issues and different years are involved; and the parties are not the same. The fact that the issues here involved might have been raised in the former proceeding is of no consequence, since in fact they were not. The record in the former proceeding fails to disclose any demand made by the respondent for income taxes due or any allowance or deduction claimed by the petitioner, acting as the executrix of the decedent's estate, for income tax liability. Income tax liability of the decedent was not put in issue, considered, or decided by the Board of Tax Appeals or the Circuit Court of Appeals in the former proceeding. We conclude that the doctrine of *res judicata* is not applicable to the determination of income tax liability in these proceedings as to either decedent or petitioner. See *Commissioner* v. *Sunnen, supra.*

Petitioner also contends that the dividends which she and decedent received from the Cadwallader-Gibson Lumber Co. in 1919 are not subject to normal tax by reason of the fact that the corporation was engaged in business in the United States and was taxable upon its net income. There is no statutory provision for exempting from income tax the dividends of a corporation whose earnings are subject to corporation income tax. Section 216 of the Revenue Act of 1918 provides for the allowance of a credit for the purpose of the normal tax of divi-

dends received from corporations taxable upon their net income. Individuals were allowed to credit against income for the purpose of the normal tax only the amount of dividends received from corporations taxable upon their net income under section 230 of the Act of 1918, as prescribed by sections 232, 233, and 234 of that act.

The evidence adduced with respect to the nature of the corporation's business activities in 1919 shows that it did not do business or derive gross income from sources in the United States in 1919, within the meaning of the Act of 1918. The corporation had no offices or sales organization of its own within the United States and did not solicit business there. Orders for lumber were procured by the import-export brokerage firm of Henry W. Peabody & Co. of New York. The orders were forwarded to the lumber company in Manila, where it either accepted or rejected them as it saw fit. It filled orders by loading the lumber aboard ships in Manila under on-board bills of lading to Peabody & Co. The brokers then took complete charge of the lumber shipment, paying all freight and insurance expenses during shipment and delivery and billing the customer in the United States. When Peabody & Co. received payment for the lumber it deducted all expenses and its commissions and credited the balance to the lumber company. Lumber was not shipped for future sale or consignment or sold directly to Peabody & Co. but was always shipped to fill purchase orders solicited by and received from the brokers. There is no evidence of any agreements between the lumber company and the brokers which would indicate the existence of any other arrangement for handling lumber or making sales. We conclude that the lumber was sold in Manila and that the lumber company's gross income was derived there. It follows that petitioner and decedent's estate are not entitled to any credit for the purpose of the normal tax of amounts received as dividends from the Cadwallader-Gibson Lumber Co. in 1919. Cf. *Compania General de Tabacos de Filipinas* v. *Collector*, 279 U. S. 306; *East Coast Oil Co., S. A.*, 31 B. T. A. 558; affd., 85 Fed. (2d) 322; certiorari denied, 299 U. S. 608; and *Ronrico Corporation*, 44 B. T. A. 1130.

The final issue is raised only as to the estate of B. W. Cadwallader, deceased. It involves the correctness of the respondent's allowance of credit for income tax paid to the Philippine Islands in the years 1918 and 1919 in accordance with section 222 (a) (1) of the Revenue Act of 1918.[1] In the income tax returns filed for 1918 and 1919, for decedent and petitioner, credits were claimed in 1918 for taxes paid to

[1] SEC. 222. (a) That the tax computed under Part II of this title shall be credited with: (1) In the case of a citizen of the United States, the amount of any income, war-profits and excess-profits taxes paid during the taxable year to any foreign country, upon income derived from sources therein, or to any possession of the United States; * * *

the Philippine Islands in 1919, and in 1919 for taxes paid in 1920. Since decedent and petitioner kept their records and rendered their income tax returns on the basis of cash receipts and disbursements, respondent's disallowance of the credits claimed was clearly correct. Petitioner has not pressed the point on brief, so she must be deemed to have abandoned it.

However, the petitioner does urge on brief that respondent erred in allowing as a credit against the income tax of the decedent in the year 1919 only $419.20 instead of $432.16, a difference of $12.96. It was stipulated by the parties, and so found, that the correct amount paid in income taxes to the Philippine Islands in 1919 was $432.16. Respondent erred in failing to credit this amount in full.

*Decisions will be entered under Rule 50.*