27 Cal.2d 705 (1946)
WEST PUBLISHING COMPANY (a Corporation), Appellant,
v.
CHAS. J. McCOLGAN, as Franchise Tax Commissioner, etc., Respondent.
Sac. No. 5741. 
Supreme Court of California. In Bank. 
Feb. 27, 1946.
 John W. Preston for Appellant.
 Robert W. Kenny, Attorney General, and John L. Nourse and James E. Sabine, Deputies Attorney General, for Respondent.
 TRAYNOR, J.
 Plaintiff, a Minnesota corporation, with its principal place of business in St. Paul, Minnesota, is engaged in the business of selling law books and other publications *707 throughout the United States and in foreign countries. It has not qualified to do intrastate business in California. [1a] During 1937, 1938 and 1939 it shipped books and other publications into this state pursuant to orders taken here by its employees. During this time it had four regularly employed solicitors in this state who devoted their entire time to plaintiff's business. Its California employees were authorized to receive payments on orders taken by them, to collect delinquent accounts, and to make adjustments in case of complaints by customers. The employees were given space in the offices of attorneys in return for the use of plaintiff's books stored in such offices. In legal newspapers and periodicals published and circulated in California, plaintiff advertised as its local offices those occupied by its employees. It refused to file returns under the California Corporation Income Tax Act (Stats. 1937, ch. 765, p. 2184, as amended by Stats. 1939, ch. 1049, p. 2902; Deering's Gen. Laws, Act 8494a) [fn. *] for the taxable years 1937, 1938 and 1939, or to furnish any information requested by the Bank and Corporation Franchise Tax Commissioner (hereinafter referred to as commissioner). The commissioner, pursuant to section 18(a) of the act, made assessments based upon his estimate of the amount of net income derived by plaintiff from sources in California. The commissioner collected part of the amounts so assessed pursuant to the withholding procedure provided in section 25 of the act, and plaintiff brought this action to obtain a refund of the amounts so collected. Defendant filed an answer as well as a counterclaim for the unpaid part of the assessment. The trial court entered judgment for defendant and plaintiff appeals.
 [2] Plaintiff contends that the tax in question is unconstitutional on the grounds that California cannot impose a tax on any part of the net income of a foreign corporation engaged exclusively in interstate commerce and that the tax *708 discriminates against interstate commerce and violates the due process clause of the Fourteenth Amendment to the Constitution of the United States. It also contends that it has no income from sources in California within the meaning of the act.
 The Corporation Income Tax Act is complementary to the Bank and Corporation Franchise Tax Act. (Stats. 1929, ch. 13, p. 19, as amended; Deering's Gen. Laws, Act 8488.) The subject of the tax under the first is net income. Under the second it is the privilege of exercising corporate franchises in this state. "A franchise tax is a tax imposed upon a corporation for the right or privilege of being a corporation or doing business in a corporate capacity." (Flint v. Stone Tracy Co., 220 U.S. 107 [31 S.Ct. 342, 55 L.Ed. 389]; Pacific Co. Ltd. v. Johnson, 212 Cal. 148, 154-155 [298 P. 489].) Such a tax is inapplicable to a corporation engaged exclusively in interstate commerce for "a state may not impose a charge for the enjoyment of a right granted by the federal Constitution. Thus, it may not exact a license tax for the privilege of carrying on interstate commerce ... although it may tax the property used in, or the income derived from that commerce, so long as the taxes are not discriminatory." (Murdock v. Pennsylvania, 319 U.S. 105, 113 [63 S.Ct. 870, 891, 87 L.Ed. 1292, 146 A.L.R. 81]; General Trading Co. v. State Tax Com., 322 U.S. 335, 338 [64 S.Ct. 1028, 1030, 88 L.Ed. 1309, 1319]; McGoldrick v. Berwind-White Coal Mining Co., 309 U.S. 33, 56-58 [60 S.Ct. 388, 84 L.Ed. 565, 128 A.L.R. 876]; Western Live Stock v. Bureau, 303 U.S. 250 [58 S.Ct. 546, 82 L.Ed. 823, 115 A.L.R. 944]; Alpha Portland Cement Co. v. Massachusetts, 268 U.S. 203 [45 S.Ct. 477, 69 L.Ed. 916]; see, also, Cheney Bros. Co. v. Massachusetts, 246 U.S. 147 [38 S.Ct. 295, 62 L.Ed. 632]; Ozark Pipe Line Co. v. Monier, 266 U.S. 555 [45 S.Ct. 184, 69 L.Ed. 439]; Anglo-Chilean Nitrate Sales Corp. v. Alabama, 288 U.S. 218 [53 S.Ct. 373, 77 L.Ed. 710]; Atlantic Lumber Co. v. Commissioner, 298 U.S. 553, 555 [56 S.Ct. 887, 80 L.Ed. 1328].)
 In relying on the foregoing cases for the proposition that a foreign corporation engaged within a state solely in interstate commerce is immune from net income taxation by that state, plaintiff overlooks the distinction made by the United States Supreme Court between a tax whose subject is the privilege of engaging in interstate commerce and a tax whose subject is the net income from such commerce. It is settled by *709 decisions of the United States Supreme Court that a tax on net income from interstate commerce, as distinguished from a tax on the privilege of engaging in interstate commerce, does not conflict with the commerce clause. (United States Glue Co. v. Town of Oak Creek, 247 U.S. 321, 326, 329 [38 S.Ct. 499, 62 L.Ed. 1135]; Shaffer v. Carter, 252 U.S. 37, 57 [40 S.Ct. 221, 64 L.Ed. 445]; Underwood Typewriter Co. v. Chamberlain, 254 U.S. 113, 119-120 [41 S.Ct. 45, 65 L.Ed. 165]; Bass, Ratcliff & Gretton, Ltd., v. State Tax Com., 266 U.S. 271 [45 S.Ct. 82, 69 L.Ed. 282]; Atlantic Coast Line R. Co. v. Daughton, 262 U.S. 413, 416 [43 S.Ct. 620, 67 L.Ed. 1051]; Butler Bros. v. McColgan, 315 U.S. 501 [62 S.Ct. 701, 86 L.Ed. 991].) A state "may tax net income from operations in interstate commerce, although a tax on the commerce is forbidden, U.S. Glue Co. v. Oak Creek, 247 U.S. 321 [38 S.Ct. 499, 62 L.Ed. 1135]; Shaffer v. Carter, supra. Congress may levy a tax on net income derived from the business of exporting merchandise in foreign commerce, although a tax upon articles exported is prohibited by constitutional provision. ... Peck & Co. v. Lowe, 247 U.S. 165 [38 S.Ct. 432, 62 L.Ed. 1049]; Barclay & Co. v. Edwards, 267 U.S. 442, 447 [45 S.Ct. 348, 69 L.Ed. 135]." (New York ex rel. Cohn v. Graves, 300 U.S. 308, 313-314 [57 S.Ct. 466, 81 L.Ed. 668, 108 A.L.R. 721].) "But it was not the purpose of the commerce clause to relieve those engaged in interstate commerce of their just share of state tax burdens, merely because an incidental or consequential effect of the tax is an increase in the cost of doing business. ... A tax may be levied on net income wholly derived from interstate commerce." (McGoldrick v. Berwind-White Coal Mining Co., 309 U.S. 33, 46 [60 S.Ct. 388, 84 L.Ed. 565, 128 A.L.R. 876], italics added.) State power to impose a tax on net income wholly derived from interstate commerce was recently reaffirmed in Memphis Natural Gas Co. v. Beeler, 315 U.S. 649, 656 [62 S.Ct. 857, 86 L.Ed. 1090]; see, also, International Harvester Co. v. Wisconsin, 322 U.S. 435, 442 [64 S.Ct. 1060, 88 L.Ed. 1373].) Such power is so well recognized that appeals questioning it are dismissed by the United States Supreme Court for want of a substantial federal question. (Memphis Natural Gas Co. v. State Tax Com., 323 U.S. 682 [65 S.Ct. 440, 89 L.Ed. 553], same case, ___ Miss. ___ [19 So.2d 477]; Parke Davis & Co. v. Cook, 323 U.S. 681 [65 S.Ct. 436, 89 L.Ed. 552], same case 198 Ga. 457 [31 S.E.2d 728].) *710
 The use of income as the measure rather than the subject of the tax in the Bank and Corporation Franchise Tax Act is in conformity with a method of taxing national banks authorized by section 5219 of the United States Revised Statutes that permits the inclusion of income in the measure of the tax that could not be made the subject of the tax. (Pacific Co., Ltd. v. Johnson, 212 Cal. 148 [298 P. 489], 285 U.S. 480 [52 S.Ct. 424, 76 L.Ed. 893]; Educational Films Corp. v. Ward, 282 U.S. 379 [51 S.Ct. 170, 75 L.Ed. 400]; Flint v. Stone Tracy Co., 220 U.S. 107 [31 S.Ct. 342, 55 L.Ed. 389].) The use of income as the subject of the tax in the Corporation Income Tax Act is in conformity with the decisions of the United States Supreme Court, cited above, that a state may tax net income from interstate commerce even though it cannot tax the privilege of engaging in interstate commerce. Before the enactment of the Corporation Income Tax Act, foreign corporations engaged in interstate business within the state without being subject to a tax burden comparable to the franchise tax imposed on domestic corporations and other foreign corporations competing in the same market. The Corporation Income Tax Act removed that discrimination.
 [3] There is no discrimination against interstate commerce in the provision of the Corporation Income Tax Act making the tax inapplicable to income that a corporation must include in the measure of the tax under the Bank and Corporation Franchise Tax Act and allowing an offset for the tax imposed on the corporation under that act. This provision precludes a double burden on corporations subject to the latter act. The tax burden imposed by the Bank and Corporation Franchise Tax Act is at least equal to that imposed by the Corporation Income Tax Act. It is settled that a tax does not discriminate against interstate commerce if other related taxes impose equal burdens on local commerce. (Gregg Dyeing Co. v. Query, 286 U.S. 472 [52 S.Ct. 631, 76 L.Ed. 1232]; Interstate Busses Corp. v. Blodgett, 276 U.S. 245 [48 S.Ct. 230, 72 L.Ed. 551]; Henneford v. Silas Mason Co., 300 U.S. 577 [57 S.Ct. 524, 81 L.Ed. 814]; Southern Pacific Co. v. Gallagher, 306 U.S. 167 [59 S.Ct. 389, 83 L.Ed. 586].)
 [4] Nor is there any merit to the contention that the act discriminates against interstate commerce on the ground that it subjects part of plaintiff's income to double taxation, given the taxability of plaintiff's entire net income in the state of its domicile. Taxation in one state is not an immunization against taxation in other states. (State Tax Com. v. Aldrich, *711 316 U.S. 174 [62 S.Ct. 1008, 86 L.Ed. 1358, 139 A.L.R. 1436]; Curry v. McCanless, 307 U.S. 357 [59 S.Ct. 900, 83 L.Ed. 1339, 123 A.L.R. 162]; Graves v. Elliott, 307 U.S. 383 [59 S.Ct. 913, 83 L.Ed. 1356]; Guaranty Trust Co. v. Virginia, 305 U.S. 19 [59 S.Ct. 1, 83 L.Ed. 16].) Taxation by states in which a corporation carries on business activities is justified by the advantages that attend the pursuit of such activities. (Wisconsin v. J. C. Penney Co., 311 U.S. 435, 446 [61 S.Ct. 246, 85 L.Ed. 267, 130 A.L.R. 1229].) "Income may be taxed both by the state where it is earned and by the state of the recipient's domicile. Protection, benefit and power over the subject matter are not confined to either state." (State Tax Com. v. Aldrich, supra, at p. 178; Curry v. McCanless, supra, at p. 367.)
 [5] Plaintiff contends that the tax is void on the ground that it was imposed on the gross receipts from its business in interstate commerce. Section 18(a) of the act provides: "If any taxpayer, upon notice and demand by the commissioner, fails or refuses to make and file a return required by this act, the commissioner is authorized to make an estimate of the net income and to compute and levy the amount of the tax due under this act from any available information." Plaintiff was repeatedly requested to furnish information before the assessment but refused to do so. The record discloses that the commissioner's only information as to plaintiff's income from California sources related to its gross sales to California customers. This information was not furnished in any return made by the taxpayer. It was acquired by the commissioner from the State Board of Equalization, which had been informed by plaintiff's accountants that its gross revenue from California sources averaged $160,000 a year. To cover the possibility that the actual amount of its gross income attributable to California that would have been revealed on a return would be higher than this amount, the commissioner estimated that $200,000 represented such income. Net income is defined by the act as gross income less the deductions allowed. The commissioner estimated that plaintiff's deductions would amount to 80 per cent of its gross income and computed the tax on an estimated net income of $40,000. There is no proof that these estimates were too high, and there is nothing in the record to discount the possibility that they might even be too low. No question was raised either in the claim for refund filed with the commissioner or in the pleadings filed in *712 this action concerning the amounts of the assessments; plaintiff merely contended that no tax could be validly imposed. It chose this way of challenging the state's authority to impose the tax, taking the risk that if such authority existed its position in court would be that of a delinquent taxpayer that has failed to exhaust its administrative remedies. (Alexander v. State Personnel Board, 22 Cal.2d 198 [137 P.2d 433].) If the commissioner erred in his computation, the error could easily have been avoided by giving him the necessary information at the outset, or it could have been corrected by giving the necessary information upon the filing of the claim for refund. Plaintiff cannot complain of alleged errors in the computation of tax liability, when it refused to avail itself of its administrative remedies to prevent or correct such errors. (Universal Cons. Oil Co. v. Byram, 25 Cal.2d 353, 361, 362 [153 P.2d 746]; Dawson v. County of Los Angeles, 15 Cal.2d 77, 81 [98 P.2d 495]; Los Angeles etc. Co. v. County of Los Angeles, 162 Cal. 164, 168 [121 P. 384]; People v. Keith Railway Equipment Co., 70 Cal.App.2d 339, 346, 347 [161 P.2d 244]; People v. Richardson, 37 Cal.App.2d 275, 281 [99 P.2d 366]; Alexander v. State Personnel Board, supra; Abelleira v. District Court of Appeal, 17 Cal.2d 280 [109 P.2d 942, 132 A.L.R. 715]; Gorham Mfg. Co. v. State Tax Com., 266 U.S. 265 [45 S.Ct. 80, 69 L.Ed. 279]; see 51 Am.Jur. 698-699.) The same answer must be given to plaintiff's contention that its business was a unitary business and that its income was not allocated to this state and others in conformity with section 13 of the act. (See Butler Bros. v. McColgan, 17 Cal.2d 664 [111 P.2d 334], aff'd 315 U.S. 501 [62 S.Ct. 701, 86 L.Ed. 991].) Allocation under section 13 could not be made without the information that plaintiff alone could supply. "Litigants may not, by refusing or neglecting to submit issues of fact to such agencies, by-pass them, and call upon the courts to determine in a suit such as this, matters properly determinable originally by such agencies." (People v. Keith Railway Equipment Co., 70 Cal.App.2d 339, 346 [161 P.2d 244].)
 [6] Plaintiff contends that it has no income from sources in California within the meaning of the act on the ground that income derived from activities in furtherance of a purely interstate business does not have a source within this state. This conclusion is contrary to the express provision of the act that "income from sources within this state includes ... income from any activities carried on in this state, regardless *713 of whether carried on in intrastate, interstate or foreign commerce." All of the cases cited by plaintiff (Department of Treasury v. International Harvester Co., 221 Ind. 416 [47 N.E.2d 150]; Commissioner of Internal Revenue v. Piedras Negras Broadcasting Co., 127 F.2d 260; Compania General de Tabacos v. Collector of Internal Revenue, 279 U.S. 306 [49 S.Ct. 304, 73 L.Ed. 704]; Commissioner of Internal Revenue v. East Coast Oil Co. S. A., 85 F.2d 322), involved statutory construction rather than constitutional power, and none of them involved a statute like the act in question which expressly defines income from sources within the state as including income from any activities carried on in the state.
 [1b] Plaintiff contends that the tax violates the due process clause of the Fourteenth Amendment of the Constitution of the United States on the grounds that the state is without jurisdiction of the person, property, or business of the plaintiff, and that it gives plaintiff no protection, opportunities, or benefits that would justify a tax. The record shows without conflict that plaintiff engages in substantial income-producing activities in California. It has local offices here as well as employees who devote their entire time to soliciting orders, receiving payments, adjusting complaints, collecting delinquent accounts, and performing other services for plaintiff. This state provides a market in which plaintiff operates in competition with local law-book publishers. Plaintiff's agents receive the same protection and other benefits from the state as agents carrying on business activities for a principal engaged in intrastate business. The state protects plaintiff's business transactions within its borders and maintains courts in which plaintiff enforces payment for the sale of its publications. In West Publishing Co. v. Superior Court, 20 Cal.2d 720 [128 P.2d 777]; cert. den. 317 U.S. 700 [63 S.Ct. 524, 87 L.Ed. 559], it was held that by virtue of these activities plaintiff is present in this state and subject to the jurisdiction of its courts. (See, also, Frene v. Louisville Cement Co., 134 F.2d 511.) "The activities which establish its 'presence' subject it alike to taxation by the state and to suit to recover the tax." (International Shoe Co. v. Washington, ___ U.S. ___ [66 S.Ct. 154, 161, 90 L.Ed. ___].)
 The International Shoe case, supra, settles any doubt as to the validity of the tax in question under the due process clause. That case held that a Delaware corporation was subject to suit in the courts of the State of Washington and was *714 liable under the statutes of that state for contributions to the state unemployment compensation fund. The corporation also contended that the state statute violated the commerce clause, but the court held that there was no basis for that contention in view of a federal statute providing that "No person required under any State law to make payments to an unemployment fund shall be relieved from compliance therewith on the ground that he is engaged in interstate commerce. ..." The activities of the International Shoe Company in the State of Washington, which served as the constitutional basis for the imposition of the tax there involved were less extensive than the activities of plaintiff in this state. The corporation's Washington activities are described by the United States Supreme Court as follows: "Appellant has no office in Washington and makes no contracts either for sale or purchase of merchandise there. It maintains no stock of merchandise in that state and makes there no deliveries of goods in intrastate commerce. During the years from 1937 to 1940, now in question, appellant employed eleven to thirteen salesmen under direct supervision and control of sales managers located in St. Louis. These salesmen resided in Washington; their principal activities were confined to that state; and they were compensated by commissions based upon the amount of their sales. The commissions for each year totaled more than $31,000. Appellant supplies its salesmen with a line of samples, each consisting of one shoe of a pair, which they display to prospective purchasers. On occasion they rent permanent sample rooms, for exhibiting samples in business buildings, or rent rooms in hotels or business buildings temporarily for that purpose. The cost of such rentals is reimbursed by appellant. The authority of the salesmen is limited to exhibiting their samples and soliciting orders from prospective buyers, at prices and on terms fixed by appellant. The salesmen transmit the orders to appellant's office in St. Louis for acceptance or rejection, and when accepted the merchandise for filling the orders is shipped f.o.b. from points outside Washington to the purchasers within the state. All the merchandise shipped into Washington is invoiced at the place of shipment from which collections are made. No salesman has authority to enter into contracts or to make collections." (66 S.Ct. 154, 157.) Although the corporation's only activities in the State of Washington were those of its salesmen as described above, and although those activities were exclusively in interstate commerce, the court nevertheless held that the tax did not violate *715 the due process clause. This holding disposes of plaintiff's contention that a state cannot exact a tax from a foreign corporation engaged exclusively in interstate commerce without violating the due process clause. It also disposes of the contention that a corporation carrying on such activities as plaintiff's in California receives no protection or benefits that would justify a tax: "But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state ... the activities carried on in behalf of appellant in the State of Washington were neither irregular nor casual. They were systematic and continuous throughout the years in question. They resulted in a large volume of interstate business, in the course of which appellant received the benefits and protection of the laws of the state, including the right to resort to the courts for the enforcement of its rights. ..." (66 S.Ct. 154, 160.) The court held that the State of Washington had constitutional power to impose the tax and to subject appellant to suit to recover it, and concluded its opinion with the statement quoted above that "... The activities which establish its 'presence' subject it alike to taxation by the state and to suit to recover the tax."
 The judgment is affirmed.
 Gibson, C.J., Shenk, J., Edmonds, J., Carter, J., and Spence, J., concurred.
NOTES
[fn. *] *. Section 3 of the act, as enacted in 1937, provides: "There shall be levied, collected and paid for each taxable year, a tax at the rate of four per cent upon the net income of every corporation derived from sources within this State on or after January 1, 1937; provided, however, that the income of any corporation which is included in the measure of the tax imposed by the Bank and Corporation Franchise Tax Act, Statutes 1929, Chapter 13, as amended, shall not be subject to the tax imposed by this act. Income from sources within this State includes income from tangible or intangible property located of having a situs in this State and income from any activities carried on in this State, regardless of whether carried on in intrastate, interstate or foreign commerce."