**SIERRA VISTA HOSPITAL, INC., a California corporation; and El Cajon Valley Hospital, Inc., a California corporation**

v.

**The UNITED STATES.**

**Nos. 488-78, 466-79C.**

United States Court of Claims.

Sept. 8, 1982.

Patric Hooper, Los Angeles, Cal., atty. of record, for plaintiffs.  Weissburg & Aronson, Inc., Los Angeles, Cal., of counsel.

Sandra P. Spooner, with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D. C., for defendant.  Henry Eigles, Dept. of Health and Human Services, Baltimore, Md., of counsel.

Before FRIEDMAN, Chief Judge, and KASHIWA and BENNETT, Judges.

ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

BENNETT, Judge:

Plaintiffs, Sierra Vista Hospital, Inc., and El Cajon Valley Hospital, Inc., are corporate providers of hospital services in the Medicare program.  In these consolidated cases they challenge by motion for summary judgment a determination of the Secretary of the Department of Health, Education, and Welfare (now Department of Health & Human Services) made through the Secretary's fiscal intermediary agents, Blue Cross of Southern California and Blue

Cross Association. They seek to be reimbursed for payments of California franchise taxes for fiscal years 1967 and 1968. The intermediaries held that the tax was based on income and was not a cost of patient care and thus not reimbursable under the Medicare program.[1] We agree.

Plaintiffs first instituted suit in the United States District Court for the Central District of California where the Secretary's decision was upheld. On appeal to the Ninth Circuit the case was remanded with instructions that it be transferred here for jurisdictional reasons. Defendant has filed a cross-motion for summary judgment. The issue we must decide is clear-cut—whether payment of the California franchise tax, a tax based on income, is a reimbursable cost under Medicare.

The present litigation involves claims by Medicare providers under Part A—Hospital Insurance Benefits for the Aged and Disabled. 42 U.S.C. §§ 1395c–1395i–2 (1976). Our limited scope of review of such claims under the Tucker Act, 28 U.S.C. § 1491, is now well established, starting with *Goldstein v. United States*, 201 Ct.Cl. 888, *cert. denied*, 414 U.S. 974, 94 S.Ct. 287, 38 L.Ed.2d 217 (1973), followed by *Whitecliff, Inc. v. United States*, 210 Ct.Cl. 53, 536 F.2d 347 (1976), *cert. denied*, 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977), as well as many others. Our review is limited, however, to ensure compliance with statutory and constitutional provisions.

Part A is designed to provide basic protection against the cost of hospital and post-hospital services for qualifying individuals age 65 and over by providing for government payment (after a deductible) of the "reasonable cost" of certain defined basic services or the "customary charges" if lower than the reasonable cost. Providers of services are reimbursed by the Secretary from the Federal Hospital Insurance Trust Fund which is, in turn, financed by special

wage taxes. 42 U.S.C. § 1395i. Local intermediaries such as Blue Cross are the disbursing agents pursuant to 42 U.S.C. § 1395h.

Reasonable cost is determined in accordance with 42 U.S.C. § 1395x(v)(1)(A), which states in pertinent part:

> The reasonable cost of any services shall be the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services, and shall be determined in accordance with regulations establishing the method or methods to be used, and the items to be included, in determining such costs for various types or classes of institutions, agencies and services; * * *.

This provision further grants the Secretary specific authority to prescribe the referenced regulations establishing "the methods to be used, and the items to be included" in determining reasonable costs for the efficient delivery of needed health services to individuals covered by the program, and to ensure that those costs will not be borne by individuals not so covered and the costs with respect to those not so covered will not be borne by such insurance programs.

Pursuant to the foregoing statutory mandate the Secretary has promulgated regulations which define reasonable costs and require that actual costs be incurred and that they relate to patient care. 42 C.F.R. § 405.451 (1981)[2] provides in pertinent part:

> (a) *Principle.* All payments to providers of services must be based on the reasonable cost of services covered under title XVIII of the Act and related to the care of beneficiaries. Reasonable cost includes all necessary and proper costs incurred in rendering the services, subject to principles relating to specific items of revenue and cost.

> \*　　\*　　\*　　\*　　\*　　\*

---

1. Plaintiffs appealed the adverse decisions of the intermediaries, and hearings were held on their appeals by the Provider Appeals Committee which affirmed.

2. All citations are to 42 C.F.R. where the pertinent regulations appear instead of to 20 C.F.R. where they appeared until October 1, 1977. There has been no substantive change relevant here.

(b)(2) *Necessary and proper costs.* Necessary and proper costs are costs which are appropriate and helpful in developing and maintaining the operation of patient care facilities and activities. They are usually costs which are common and accepted occurrences in the field of the provider's activity.

\* \* \* \* \* \*

(c)(3) The determination of reasonable cost of services must be based on cost related to the care of beneficiaries of title XVIII of the Act. Reasonable cost includes all necessary and proper expenses incurred in rendering services, such as administrative costs, maintenance costs, and premium payments for employee health and pension plans. It includes both direct and indirect costs and normal standby costs. However, where the provider's operating costs include amounts not related to patient care \* \* \* such amounts will not be allowable.

The interpretative guide to implementation of the applicable statutes and regulations requiring that the Medicare program reimburse only for reasonable costs which are related to patient care is the Secretary's Provider Reimbursement Manual (1972) (the Manual). It states in relevant part:

2122.2 *Taxes Not Allowable as Costs.* —Certain taxes which are levied on providers are not allowable costs. These taxes are:

A. Federal income and excess profit taxes, \* \* \*.

B. State or local income and excess profit taxes \* \* \*.

The Manual specifically addresses franchise taxes:

2122.4 *Franchise Taxes.*—A franchise tax is a periodic assessment levied by a State or local taxing authority on the operation of a business within the borders of that governmental entity. The basis used to compute the amount of the franchise tax varies among taxing authorities. Where the amount of the franchise tax is based upon the net income of the provider, with a minimum amount stated, the following criteria will be used to deter-mine whether and in what amount a franchise tax is an allowable cost:

A. Where a provider has no net income but is required to pay a minimum franchise tax, the franchise tax is an allowable cost.

B. Where a provider realized net income which is not sufficient to incur a tax in excess of the minimum tax and the minimum tax is levied, then only the difference between the minimum franchise tax and the tax computed on net income is an allowable cost. For example, if the minimum tax is $500 and the tax computed on net income is $400, then the $400 is an income tax and only the excess ($500–$400) or $100 is an allowable cost.

C. Where a provider has net income sufficient to incur a tax greater than the minimum franchise tax, the entire tax is considered an income tax and no part of the tax is an allowable cost. For example, if the minimum tax is $500 and the tax computed on income is $600, then the entire $600 is a nonallowable cost.

D. Where the amount of the franchise tax is based upon several criteria, one of which is net income, the amount of the franchise tax computed on net income is not an allowable cost. For example, if the minimum tax is $500, the tax computed on net income is $400, and the tax levy on capital stock is $600, then $400 remains an income tax and only the excess ($600–$400) or $200 is an allowable cost.

█ The Manual thus makes it clear that, in interpreting the statutes and regulations, the Secretary has determined that where franchise taxes are calculated on a basis other than net income they are a reimbursable cost of caring for Medicare patients but not to the extent that the tax is due to net income. This has been defendant's administrative practice since January 3, 1968.

The California Revenue & Taxation Code, section 23151, provides that, with exceptions not relevant here, every corporation

doing business in that state must pay annually to the state for the privilege of exercising its corporate franchise there, a tax according to or measured by its net income at a rate of 7.6 percent upon the basis of its net income for the next preceding income year. In addition, each such corporation must pay an annual minimum franchise of one hundred dollars. The latter payment appears to be designed for corporations operating at a loss and to equate profit and nonprofit corporate providers.

Plaintiffs submit to the court that, notwithstanding that the California franchise tax is based on net income in large part, it still is a cost to the providers for the privilege of conducting corporate business and should thus be reimbursable. They say it is a license fee, in effect, and should be reimbursable as an indirect cost. Plaintiffs challenge the Manual provisions as having no legal significance and as being contrary to statutes and regulations which govern here.

Defendant says that a tax based on profits is simply not a cost of patient care, that Medicare does not provide for profit, and profit is clearly not contemplated by the governing statutes and regulations.

Since the statute permits reimbursement only of the reasonable necessary cost of serving Medicare patients, profits can only be derived by providers from services rendered to non-Medicare patients or on equity capital, strictly limited, as will be discussed later. If, however, a tax based on net income is to be reimbursed, the Secretary would be paying the profits of the provider which would otherwise be reduced by the tax. In fact, this would be underwriting the profits of a provider who was more efficient and thus more profitable than another whose basic costs of providing patient care were exactly the same but whose profit was less or none, an inequitable result.

As to plaintiffs' argument that disallowance of a tax based on income brings about inequitable treatment between profit-making and nonprofit providers, we think that defendant is again correct. Taxes based on income are not a cost of patient care but

rather a diminution of profits. Such providers are treated equitably because where the tax is based on income neither provider is reimbursed, but where the tax is not based on income both providers are reimbursed. Further, all providers in California pay the basic minimum franchise tax which is reimbursed.

We are persuaded that defendant has the better position in all of these arguments. At the cost of some brief repetition here it may be useful to glance back at some of the provisions we have cited bearing on what is reimbursable cost, and what is not.

All payments to providers of services must be based on the reasonable cost of services covered under title XVIII of the Act and related to the care of beneficiaries. [42 C.F.R. § 405.451(a).]

The reasonable cost of any services shall be the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services, * * *. [42 U.S.C. § 1395x(v)(1)(A).]

Reasonable cost includes all necessary and proper expenses incurred in rendering services, such as administrative costs, maintenance costs * * * both direct and indirect costs * * *. However, where the provider's operating costs include amounts not related to patient care * * * such amounts will not be allowable. [42 C.F.R. § 405.451(c)(3).]

Necessary and proper costs are costs which are appropriate and helpful in developing and maintaining the operation of patient care facilities and activities. [42 C.F.R. § 405.451(b)(2).]

The amount of the franchise tax computed on net income is not an allowable cost. [Provider Reimbursement Manual § 2122.2.]

Nowhere can it be gleaned from the foregoing that net income profit is reimbursable as a reasonable cost of providing Medicare patient care or in the operation of facilities for such care. On the contrary, it is provided that operating costs not related to Medicare patient services will not be allowable and that franchise taxes computed on net

income are not allowable. It requires quite a stretch of imagination to conclude that reimbursement of a tax on net income is necessary to the efficient delivery of needed health services, for it is common knowledge that many such services are provided by nonprofit entities. The regulations cited make it clear that any cost not necessary to patient services must be excluded and a tax on net profits falls within that definition as not a reasonable cost of patient care.

For this conclusion it is quite unnecessary for us to decide whether the California franchise tax is an income tax. That is not the issue. It is our task here simply to ensure that the Secretary has rationally and lawfully implemented the statute. We find that he did so. Plaintiffs' position that the franchise tax payments based on net income are a cost of patient care is quite devoid of merit. Such a tax does not increase the "actual cost" of any medical service rendered to Medicare beneficiaries. It simply reduces the amount of profit the company gains from its operations. Since the Medicare Act says that reimbursable cost must be actual cost incurred by providing needed health services, the franchise tax based on income cannot be reimbursable. The Secretary had discretion under the statute to make this determination and we cannot say that his decision was an abuse of discretion or otherwise unlawful. *See AMI, Inc. v. Secretary,* 466 F.Supp. 605 (D.D.C.1979), *aff'd,* 677 F.2d 118 (D.C.Cir., 1981). As to plaintiffs' reliance on *AMI-Chanco, Inc. v. United States,* 217 Ct.Cl. 76, 576 F.2d 320 (1978), we find it inapposite. That case involved stock maintenance costs of a corporation which were not payments predicated on net income or profit, as in the present case.

The specious contention has been made, however, that Medicare does provide for reimbursement of a tax on net income because of the following provision found at 42 C.F.R. § 405.429:

§ 405.429 *Return on equity capital of proprietary providers.*

(a) *Principle.* (1) A reasonable return on equity capital invested and used in the provision of patient care is allowable as an element of the reasonable cost of covered services furnished to beneficiaries by proprietary providers. The amount allowable on an annual basis is determined by applying to the provider's equity capital a percentage equal to one and one-half times the average of the rates of interest on special issues of public debt obligations issued to the Federal Hospital Insurance Trust Fund for each of the months during the provider's reporting period or portion thereof covered under the program.

Plaintiffs conclude from the foregoing that, since their net profit is a return on equity capital they have invested, the franchise tax on the profit is reimbursable under this provision as a reasonable indirect cost of patient care. This conclusion conveniently overlooks the second sentence in the regulation quoted which describes exactly how the allowance is to be computed and how it is limited and on what it is based. The provision in no way fits plaintiffs' claim for full reimbursement of the tax it pays on net profit. If that was the intent of the regulation it would say so.

A colorable basis for plaintiffs' claim involves the application of the California franchise tax to the portion of plaintiffs' net income attributable to the Secretary's allowance of a return upon equity capital. The argument is that, since the Secretary determined that plaintiffs were entitled to receive a return on equity as a reasonable cost of providing medical services to Medicare beneficiaries, the application of the California franchise tax to the amount the Secretary allowed for that purpose would reduce the rate the Secretary allowed; and that the Secretary therefore should give plaintiffs additional reimbursement to make up the reduction in its profit, *i.e.,* its rate of return on equity which the Secretary provided. The record does not show, however, whether California applies its franchise tax to any portion of plaintiffs' net income attributable to the return on equity for which the Secretary provided reimbursement.

The identical argument could be made to justify reimbursement of any amounts plaintiffs paid to California (or, indeed, to the United States) as income taxes. Such payments would have the identical effect in reducing plaintiffs' return on equity that the franchise tax has. The Providers Manual precludes reimbursement for state or federal income taxes. In either situation, there is nothing in the statute, the regulations, or the Manual that requires the Secretary to allow a provider not only a return on equity but also an additional amount to compensate the provider for any diminution in that rate resulting from a tax that reduces its gross income.

The additional amount plaintiffs seek to maintain profit at a level that would ensure that they may fully retain the return on equity the Secretary allowed is not a reasonable cost of providing medical service. Rather, it is an amount intended to protect plaintiffs' original gross profit from any diminution from taxes based upon income.

Plainly, the regulation on equity capital does not mandate that the Secretary replace profit to the extent it is diminished by a tax based on income. As the court said in *AMI, Inc. v. Secretary*, 466 F.Supp. at 626, when it rejected the same contention plaintiffs make here: "[T]his argument turns the return on equity capital provision on its head" because it attempts to "convert a provision that expressly limits reimbursement into a basis for expanding it." The regulation recognized a need to encourage capital investment but it placed a 1.5–percent cap on the amount of such investment that the Medicare program could subsidize as a cost. We cannot read the regulation as plaintiffs would have us do to require the Medicare program to protect profits from the effects of taxation. We cannot rewrite this regulation to include a tax based on net income as a return on invested equity capital or as a cost of patient care.

Plaintiffs say, however, that if franchise taxes based on net income are not reimbursable, it is inconsistent to include franchise liability in the return on equity capital computation. Plaintiffs say it is inconsistent because section 405.429 limits capital entries to those "in the provision of patient care," "related to patient care," and "for necessary and proper operation of patient care facilities." Plaintiffs argue it is wrong to treat franchise taxes as unrelated to patient care for the purpose of disallowing costs but treating them as related to patient care for the purpose of reducing amounts paid to providers under the return on equity rules.

The foregoing is an issue that was treated fully by the opinion in *AMI, Inc. v. Secretary*, 466 F.Supp. at 627–28. It is not necessary to repeat all of that discussion here but we cite the following passage which shows that the argument misses the mark.

> These regulations do clearly establish that a return on equity capital is only allowed on that portion of equity capital related to patient care. Therefore, liabilities not related to patient care (such as franchise taxes based on net income) must be *subtracted from working capital* to arrive at the net working capital necessary and proper for patient care services. This is accomplished by *including* the franchise tax liability in the return on equity capital computation. In other words, plaintiffs argue that because franchise taxes based on net income (under the Secretary's theory) are unrelated to patient care, they should be excluded from the computation. However, only by *including* them in the computation as a liability, and then *subtracting* them from the assets related to patient care will the net working capital related to patient care be determined. Accordingly, it is consistent with the regulations to include franchise taxes in the computation of the return on equity capital. [Emphasis in original.]

Plaintiffs advance miscellaneous other arguments to support their claim, saying that reimbursement of franchise taxes here would be in accordance with generally accepted accounting principles, notwithstanding the substantive requirements of the Medicare program. Plaintiffs also cite case authority outside the Medicare program

and its definitive statutory requirements to show that the contested costs should be reimbursable. They also claim that disallowance of reimbursement here would discriminate arbitrarily between California providers and those in other states where similar taxes do not exist. Plaintiffs also claim that the provisions contained in the Provider Reimbursement Manual are invalid because they constitute retroactive rulemaking. We have examined these and other allegations and find them without merit and unnecessary to resolution of the case before us.

Our task here has been described above as a narrow responsibility. That duty is to ensure that the Secretary rationally and lawfully interpreted and applied the governing statute without an abuse of discretion or denial of due process. We are fully satisfied that he met these tests and that any result here which would invalidate his action, and the authorized regulations and interpretative published guidelines on which it was based, would be an impermissible misconstruction of the congressional intent as expressed in the Act. Plaintiffs' claims for reimbursement of franchise taxes to the extent they are based on net income, are claims for payments of profits reduced by such taxes and are not reasonable or necessary costs incident to rendering patient care services. A tax predicated on net income is the antithesis of the cost of patient care, for liability for the tax can only arise if gross income exceeds costs. Such taxes have not increased the cost of patient services. If the challenged tax is a necessary cost to plaintiffs, it is because they made a net profit which the Act contemplates should be made only from non-Medicare patients and, to a narrowly defined and very limited extent, from plaintiffs' investment of equity capital. The tax is not chargeable to Medicare as a necessary and proper cost of developing and maintaining the operation of patient care facilities and services for beneficiaries under the Act. Franchise taxes based on net income are not a cost of patient care but, as we have said, are rather a diminution of profits.

Plaintiffs' motion for summary judgment is denied, defendant's cross-motion for summary judgment is granted, and the petitions are dismissed.

KASHIWA, Judge, dissenting:

I respectfully dissent.

As explained by the majority, hospitals participating in the Medicare program are in general paid the reasonable cost of covered services provided to Medicare beneficiaries. 42 U.S.C. § 1395f(b). Reasonable cost is determined in accordance with 42 U.S.C. § 1395x(v)(1)(A). That section specifies that reasonable cost of services is the cost actually incurred necessary to the efficient delivery of needed health services. Under section 1395x(v)(1)(A), the Secretary is granted authority to promulgate regulations establishing methods to be used and items to be included in determining reasonable cost. That authority, however, is limited by statute. The regulations promulgated by the Secretary

> * * * *shall* consider, among other things, the principles generally applied by national organizations or established prepayment organizations (which have developed such principles) in computing the amount of payment, to be made by persons other than the recipients of services, to providers of services on account of services furnished to such recipients by such providers. * * * Such regulations *shall* (i) take into account both direct and indirect costs of providers of services * * in order that, under the methods of determining costs, the necessary costs of efficiently delivering covered services to individuals covered by the insurance programs established by this subchapter will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by such insurance programs, * * *. [42 U.S.C. § 1395x(v)(1)(A); emphasis supplied.]

The Secretary has promulgated regulations in accord with the statute. Nowhere in the statute or regulations, however, have franchise taxes been mentioned. It is only in

the Secretary's Provider Reimbursement Manual that franchise taxes are first mentioned. The Manual is simply a statement of the Secretary's position on an issue; it does not have the force of regulation. To be valid, the Manual must therefore be in accord with statute and regulation. *See Whitecliff, Inc. v. United States*, 210 Ct.Cl. 53, 536 F.2d 347 (1976), *cert. denied*, 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977); *Goldstein v. United States*, 201 Ct.Cl. 888, *cert. denied*, 414 U.S. 974, 94 S.Ct. 287, 38 L.Ed.2d 217 (1973). Under the governing statute and regulations, the relevant question we must ask to decide this case is whether the California franchise tax is a reasonable cost necessary to the efficient delivery of health care services for Medicare patients.

The majority holds the California franchise tax is not reimbursable under Medicare simply because it is measured by net income. The majority opinion fails to recognize the very basic distinction between the *purpose* for which a tax is paid and the *method by which a tax is measured.* Whether a tax is a necessary cost of health care under the Medicare Act will logically depend upon the reason for its payment. The statute and regulations do not support the view that the way a tax is calculated is determinative of its necessity for health care delivery.

Taxes, in general, are considered indirect costs of health care and are reimbursable under Medicare. Provider Reimbursement Manual § 2122.1. Franchise taxes are licensing fees paid by a business to a state for the right to do business in that state. California Revenue & Taxation Code § 23151 states in pertinent part:

(a) With the exception of financial corporations, every corporation doing business within the limits of this state and not expressly exempted from taxation by the provisions of the Constitution of this state or by this part, shall annually pay to the state, for the privilege of exercising its corporate franchises within this state, a tax according to or measured by its net income, to be computed at the rate of 7.6 percent upon the basis of its net income

for the next preceding income year. In any event, each such corporation shall pay annually to the state, for the said privilege, a minimum tax of one hundred dollars ($100).

Thus in California before a health care facility such as the plaintiffs' may operate, it must pay a franchise tax. No health care facility can even open its doors to a Medicare patient unless it has paid the required franchise tax. Clearly a franchise tax is an indirect cost of health care. This fact is recognized by the Secretary by his reimbursement of franchise taxes that are measured by systems other than net income. *See* Provider Reimbursement Manual § 2122.4; Administrative Record, *Sierra Vista Hospital & El Cajon Hospital v. Blue Cross of Southern California*, Blue Cross Association Medicare Provider Appeal, Nos. 149 & 150 (1972).

It is not sufficient that an expense be related to health care under 42 U.S.C. § 1395x(v)(1)(A); it must be specifically related to the care of Medicare patients. The California franchise tax is computed in general as a percentage of net income for the preceding income year. A prerequisite to the operation of a hospital and the care of Medicare patients is the payment by a for-profit provider of that franchise tax. The Medicare statute draws no distinction between non-profit and for-profit providers. 42 U.S.C. § 1395x(u). The regulations specifically recognize the for-profit health care provider. 42 C.F.R. § 405.429. The California franchise tax should therefore be considered an indirect expense that is part of the reasonable cost of Medicare patient care. The Government, however, contends that a franchise tax based on net income cannot be related to the cost of health care for Medicare patients because Medicare does not provide for profit. This simply is not true. 42 C.F.R. § 405.429 provides in pertinent part:

§ 405.429 *Return on equity capital of proprietary providers.*

(a) *Principle.* (1) A reasonable return on equity capital invested and used in the provision of patient care is allowable as

an element of the reasonable cost of covered services furnished to beneficiaries by proprietary providers. The amount allowable on an annual basis is determined by applying to the provider's equity capital a percentage equal to one and one-half times the average of the rates of interest on special issues of public debt obligations issued to the Federal Hospital Insurance Trust Fund for each of the months during the provider's reporting period or portion thereof covered under the program.

(2) For the purposes of this subpart, the term "proprietary providers" is intended to distinguish providers, whether sole proprietorships, partnerships, or corporations, that are organized and operated with the expectation of earning profit for the owners, from other providers that are organized and operated on a nonprofit basis.

A specific amount of the net income the California franchise tax is measured by is therefore attributable to the return on equity paid as part of the reasonable cost of health care for Medicare patients. Since franchise taxes attributable to Medicare patients are recognized as an indirect cost necessary to the efficient delivery of services, Manual §§ 2122.1, 2122.4, that portion of the franchise tax based on the return on equity is related to the Medicare patients' care and is therefore properly reimbursable to the provider. Thus the amount of the California franchise tax paid by the plaintiffs as a result of the return on equity provided by 42 C.F.R. § 405.429 is clearly related to the delivery of services for Medicare patients and is therefore part of the reasonable cost of care for Medicare patients and reimbursable by Medicare.

This result is in accord with the practices of Blue Cross of Southern California and Blue Cross of Northern California. One important consideration in the determination of reasonable cost is

* * * the principles generally applied by national organizations or established prepayment organizations (which have developed such principles) in computing the amount of payment, to be made by persons other than the recipients of services, to providers of services on account of services furnished to such recipients by such providers. [42 U.S.C. § 1395x(v)(1)(A).]

Blue Cross of Southern California includes franchise taxes in reimbursable cost to hospitals providing services to beneficiaries. Blue Cross of Northern California, which reimburses hospitals on a charge basis, reimburses hospitals for the franchise tax by including it in the rate structure for Northern California hospitals.

The majority attempts to avoid this conclusion in several ways. First, the majority says the reimbursement of the franchise tax would provide plaintiffs with a greater profit than that specified by regulation. This argument is fallacious. What we are deciding is not whether plaintiffs must receive a guaranteed profit, but whether their payment of a franchise tax is a cost related to health care. I certainly do not believe the statute and regulations guarantee plaintiffs an after-tax profit. I do, however, believe the statute mandates the reimbursement of the franchise tax, no matter how calculated, to the extent it relates to Medicare patients.

Similarly, the majority also says the franchise tax cannot be a *cost* under the statute because it reduces the profit the business gains from its operations. Webster's Dictionary defines cost as "the amount or equivalent paid for something: PRICE * * *." Webster's Seventh New Collegiate Dictionary (1972). No special definition of cost is supported by statute, regulation, or legislative history. The California franchise tax is therefore the price paid for or cost of the right to do business in California. Further, it is not clear what the majority refers to when it speaks of *profit*. The word "profit" has no meaning within the Medicare statute nor any meaning within the California Revenue & Taxation Code. Net income as used in the California Revenue & Taxation Code is a specially defined term that includes income items and allows deductions for only certain business ex-

penses. Net income is not synonymous with the common meaning of profit; *i.e.,* business income minus business expenses.

Last, the majority says the record does not show whether California's franchise tax is applied to the portion of net income attributable to the return on equity provided by Medicare regulation. This is a poor attempt to avoid the question at issue altogether. The plaintiffs in their brief specifically ask that the portion of the franchise tax attributable to the return on equity provided by Medicare regulation be reimbursed. In addition, an examination of the California Taxation & Revenue Code shows the franchise tax considers income from all sources with no exceptions specified for that income provided by Medicare. The Government does not contest this.

The Government claims it does not consider the issue whether the California franchise tax is an income tax. The majority says it is not necessary for it to decide whether the franchise tax is an income tax. Both, however, mischaracterize the franchise tax as a "tax on net income." In addition, the majority opinion expresses the fear that agreement with the plaintiffs' arguments would lead to the requirement of reimbursement by Medicare of income taxes. The treatment of the California franchise tax by the Secretary and the majority is the same treatment accorded income taxes. For these reasons, I wish to emphasize that the California franchise tax is not an income tax.

The California franchise tax is a tax on the right to do business in California that is simply *measured by* net income. That there is a distinction between a franchise tax and an income tax has long been recognized by both the United States Supreme Court and the California Supreme Court. *Murdock v. Pennsylvania,* 319 U.S. 105, 63 S.Ct. 891, 87 L.Ed. 1292 (1943); *McGoldrick v. Berwind-White Co.,* 309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565 (1940); *Flint v. Stone Tracy Co.,* 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389 (1911); *West Publishing Co. v. McColgan,* 27 Cal.2d 705, 166 P.2d 861, *aff'd* 328 U.S. 823, 66 S.Ct. 1378, 90 L.Ed. 1603

(1946). In *Flint,* 220 U.S. at 145, 31 S.Ct. at 346, the Supreme Court said:

> While the mere declaration contained in a statute that it shall be regarded as a tax of a particular character does not make it such if it is apparent that it cannot be so designated consistently with the meaning and effect of the act, nevertheless the declaration of the lawmaking power is entitled to much weight, * * *.

The California franchise tax statute specifically states it is a tax on the right to do business in California. The State of California has a separate statute that provides for a corporate income tax. California Revenue & Taxation Code § 23501. There are several differences between the calculation of net income for purposes of the franchise tax and for purposes of the corporate income tax. The California Supreme Court has specifically recognized that California's franchise tax is not an income tax but a licensing tax measured by net income. Judge Traynor in *West Publishing,* 27 Cal.2d at 708, 166 P.2d at 863, a decision affirmed by the Supreme Court, said:

> The Corporation Income Tax Act is complementary to the Bank and Corporation Franchise Tax Act. Stats. 1919, ch. 13, p. 19, as amended, Deering's Gen. Laws, Act 8488. The subject of the tax under the first is net income. Under the second it is the privilege of exercising corporate franchises in this state. "A franchise tax is a tax imposed upon a corporation for the right or privilege of being a corporation or doing business in a corporate capacity." *Pacific Co., Ltd. v. Johnson,* 212 Cal. 148, 154, 155, 298 P. 489, 492; *Flint v. Stone Tracy Co.,* 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389, Ann.Cas. 1912B, 1312.

*Accord Rosemary Properties, Inc. v. McColgan,* 29 Cal.2d 677, 177 P.2d 757 (1947). For all the reasons stated, I find the California franchise tax is a franchise tax and is to be treated as such for purposes of the Medicare statute.

In conclusion I would find that the franchise taxes paid by plaintiffs for the years 1967 and 1968 should be reimbursed by

Medicare to the extent they are attributable to the return on equity provided by 42 C.F.R. § 405.429 since such franchise taxes are part of the reasonable cost of care of Medicare patients. I therefore dissent.