## AMERICAN SUGAR REFINING CO. v. PAGE & SHAW, Inc.

## PAGE & SHAW, Inc., v. AMERICAN SUGAR REFINING CO.

(Circuit Court of Appeals, First Circuit. January 7, 1927.)

Nos. 2056, 2057.

1. Sales ⊕⇒201(4)—C. i. f. contract may require seller to make delivery at port of destination, without affecting passage of title at time of delivery to ship.

In a c. i. f. contract for sale of sugar to be imported, a provision requiring seller to make delivery at port of destination is not unusual, nor inconsistent with passing of title to buyer on delivery to the ship, or other provisions of such a contract.

2. Sales ⊕⇒77(2)—Contract for sale of sugar held to impose landing and lighterage charges on seller.

Plaintiff operated a large sugar refinery at Boston and was a large buyer of raw sugar. A contract for purchase of sugar from defendant, to be shipped from Java, provided that delivery should be made at "a customary safe wharf or refinery as directed by the buyer," and for "marine insurance to be covered by seller from shore to shore, including risk of lighters at ports of loading and discharge." Held, that the contract contemplated delivery at plaintiff's refinery, if so directed, and that, where defendant shipped the sugar in vessels too large to pass through bridges necessary to reach the refinery, it was liable for the cost of lighterage and other landing and stevedoring charges.

In Error to the District Court of the United States for the District of Massachusetts; James M. Morton, Judge.

Action at law by the American Sugar Refining Company against Page & Shaw, Inc. From the judgment, both parties bring error. Reversed on plaintiff's writ of error, and remanded, with directions.

Claude B. Cross, of Boston, Mass. (Sherman L. Whipple, Lothrop Withington, and Edward C. Park, all of Boston, Mass., on the brief), for American Sugar Refining Co.

George R. Nutter, of Boston, Mass. (Dunbar, Nutter & McClennen, of Boston, Mass., on the brief), for Page & Shaw, Inc.

Before BINGHAM and JOHNSON, Circuit Judges, and MORRIS, District Judge.

BINGHAM, Circuit Judge. This is an action for breach of contract, in which the American Sugar Refining Company seeks to recover as damages certain charges for wharfage, lighterage, trucking, insurance, and other charges amounting to $17,849.13 incurred by the plaintiff in connection with the transfer and delivery of 4,000 tons of sugar from Commonwealth Pier in Boston by lighter to the refinery or wharf of the American Sugar Refinery at South Boston.

The only evidence in the case is a statement of agreed facts and the testimony of two witnesses called by the plaintiff. At the close of the evidence both parties submitted requests for instructions and moved for directed verdicts.

There being no dispute as to the sums claimed as due on the several items sought to be recovered as damages, but only as to whether any of the items and, if any, what ones should be allowed, the court directed a

verdict for the plaintiff in the sum of $7,671.-65, upon which judgment was entered, and both parties prosecuted these writs of error.

The questions raised by the assignments of error are (1) whether there was a breach of contract; and, if there was, (2) what of the items sought to be recovered (allowed or disallowed) should be included in the verdict.

The sugar in question was purchased by the plaintiff from the defendant under a contract dated May 20, 1920, the provisions of which so far as they relate to the shipment and the delivery of the sugar were as follows:

"Shipment to be made *during July–August, 1920, from Java to Boston.*

"Destination, by steamer to be named as soon as possible, for *Boston.*

"At a price of (20½c.) *twenty and one-half cents per pound,* costs, freight and insurance, basis nine-six degrees (96°). * * *

"Delivery of the sugar to be made at a customary safe wharf or refinery, as directed by the buyer. * * *

"*War risk insurance to be covered by seller.*

"Marine insurance to be covered by *seller* from shore to shore including risk of lighters at ports of loading and discharge.

"*Payment*: *Buyer to open immediately irrevocable bankers credit through an approved bank expiring not earlier than November 5, 1920, payable three days' sight against shipping documents.*"

The contract was on a printed form of the American Sugar Refining Company, and the portions of the contract that were written in are in italics.

It appears that the plaintiff had a refinery and landing wharf at South Boston, located on Fort Point Channel. To get to the refinery and wharf a vessel had to pass through three bridges, the draws of some of which were 50 feet in width; on August 26, 1920, the defendant notified the plaintiff the sugar had been shipped on the steamships West Carnifax and West Vaca; these vessels were more than 50 feet wide, and neither of them could pass through the bridges to the plaintiff's refinery; on November 1, 1920, certain shipping documents were presented to the bank where payment was to be made; when these shipping documents were presented, they were examined by the plaintiff, and it was found that they did not have among them a charter party of either vessel, and that the bills of lading contained provisions imposing landing and other charges upon the consignee, which it claims were not in accordance with the terms of the letter of credit or the contract; the plaintiff, however, on November 5,

1920, paid for the sugar and received the documents stating, among other things, that it did so, "without prejudice to any rights which the American Sugar Refining Company may have against the beneficiary of our letter of credit 17,455, or any other party"; the shipping documents comprised invoices from the defendant to the plaintiff for the sugar contracted for, consular invoices and certificates of origin, bills of lading and marine insurance policies; the West Carnifax arrived in Boston on Sunday, November 28, 1920; by direction of the ship's agents it was on that day brought alongside Commonwealth Pier at South Boston; on Monday, November 29, 1920, the ship's agents notified the defendant of the boat's arrival and the defendant notified the plaintiff of that fact, who at once directed the defendant to have the sugar on the West Carnifax delivered at its refinery on Fort Point Channel, free of expense to it; while this was the first notice of arrival, the plaintiff had been informed several days before that the vessel was soon expected to arrive; the defendant objected to making delivery at the refinery as directed, claiming it was not under obligation to do so by the contract; the plaintiff insisted it was so obligated; prior to the time the plaintiff was notified of the West Carnifax's arrival, part of the sugar contracted for had been unloaded on the dock at Commonwealth Pier and such unloading was continued until December 1, 1920; the ship's cargo also embraced, in addition to the sugar consigned to the plaintiff, some 1,079 chests of tea, weighing about 200 tons, and 1,572 bags of flour for other consignees; the parties being unable to reconcile their differences as to the place of delivery, and being confronted with large expenses due to handling the sugar on the pier, the defendant authorized the plaintiff to lighter the sugar from the steamer and from the pier to the refinery for its account, and to pay any wharfage charges incurred upon this sugar for its account; at the same time it was also agreed that this arrangement was made without prejudice to the rights or liabilities of either party in respect to the "lighterage and these charges," and that the ultimate responsibility for them was to be determined by the contract of May 20, 1920; when the second steamer, the West Vaca, arrived, notice was seasonably given directing the portion of her cargo of sugar consigned to the plaintiff (she carried other sugar consigned to defendant) to be delivered at the plaintiff's refinery on Fort Point Channel; a similar authorization and agreement was then given and entered into as to lightering the sugar and payment of wharf-

age charges, and the ultimate responsibility of the parties therefor; the lightering charges paid amounted to $11,444.55; this item was disallowed in the court below, except as to the sum of $48.60 included therein; the wharfage or berthing charges, amounting to $1,223.85 and interest, were allowed, as was the landing or stevedore charge of $4,448.35, with interest; the coopering charge while on ship of $149.47 was allowed; the charges for coopering on dock of $115.20, trucking on wharf of $130.43, piling on wharf of $258.95, and insurance while sugar was in transportation on lighters from dock to refinery of $316.98 were disallowed.

The main question presented by the assignments of error is whether under the terms of the contract of May 20, 1920, the defendant was required to see that the sugar was delivered at the plaintiff's refinery or wharf at South Boston, or whether it fulfilled its obligations under the contract when within the months specified it delivered the sugar of the kind and quality called for to the ships at Java, consigned to the plaintiff, and obtained and presented for payment the shipping documents that it did—the invoices of the defendant (seller) showing the amount of sugar delivered to the respective steamships consigned to the plaintiff (the buyer), the consular invoices and certificates of origin, the bills of lading containing no provision requiring delivery at "suitable wharf or refinery, at plaintiff's direction" and imposing landing or stevedore charges upon the consignee (the plaintiff), and marine insurance policies claimed not to cover transportation during lightering from the Commonwealth Pier (where both ships discharged the sugar) to the plaintiff's refinery or wharf. There are two subsidiary questions relating to the main question. One is whether the plaintiff seasonably designated its refinery as the place where the delivery of the sugar was to be made; the other is whether the plaintiff by paying for the sugar on presentation of the shipping documents, estopped itself from asserting that the shipping documents were not in accordance with the contract.

As to the first of these subsidiary questions there can be no doubt, on the agreed facts, that notice of the place of delivery of the sugar shipped on the West Vaca was seasonably given; and we think the facts fairly construed show that the plaintiff seasonably gave direction as to the place of delivery of the sugar shipped on the West Carnifax. The real reason for objecting to making delivery at the refinery, of the sugar brought on either ship, was that the contract did not obligate the defendant to do so. Nor do we find merit in the defendant's position as to the second of these questions, for the evidence shows that the plaintiff, at the time it paid the drafts for the sugar and received the shipping documents, reserved any rights it might have because of failure of the documents to comply with the obligation of the defendant under the contract and that the defendants must have so understood at the time payment was made.

As to the main question the defendant's contention is that the contract of May 20, 1920, was a c. i. f. contract, under which its obligation was fulfilled when it made the shipment of the sugar and procured the shipping documents; that its obligation did not extend to the physical delivery of the sugar at a suitable wharf at Boston or at the plaintiff's refinery or wharf in Boston; that under a c. i. f. contract delivery as between the seller and buyer takes place at the port of shipment; and that the shipping documents presented were proper and all that was required.

The defendant makes the further contention that if the contract was not a c. i. f. contract and delivery of proper shipping documents did not complete the seller's obligation, and actual delivery of the goods in Boston was required, that the plaintiff was not entitled to have delivery at its refinery on Fort Point Channel, that the only delivery called for in such cases is delivery ex-steamer at the end of the ship's tackle at such suitable wharf or mooring place as might be selected at Boston for the discharge of the goods and not at the refinery where the steamers could not go. [1] If it be assumed, in accordance with the defendant's contention, that the ordinary c. i. f. contract is not a contract that goods shall arrive, but one to ship goods complying with the contract of sale, to obtain the ordinary contract of carriage (bill of lading) to the place of destination, the ordinary contract of insurance of the goods on the voyage, and a receipt for the freight where the price covers the freight, and to tender these documents against payment of the contract price, and that the point of delivery (for the purpose of passing title) as between buyer and seller is the point of shipment (Karberg & Co. v. Blythe, Green, Jourdian & Co., [1915] 2 K. B. 379; Id., [1916] 1 K. B. 495, 510; Stroms Bruks Aktie Bolag v. Hutchison, [1905] A. C. 515, 528; Biddell Bros. v. E. C. Horst Company, [1911] 1 K. B. 214, 220), except where there is a provision in the contract indicating the contrary (Seaver v. Lindsay Light Company, 233 N. Y. 273, 135 N. E. 329, 330), the first question presented is whether

the contract now before us is a c. i. f. contract; that is, one where the price covers cost, freight and insurance and title passes to the buyer on delivery of the goods by the seller to the carrier, and, if so, whether the clause of the contract, calling for delivery "at a safe wharf or refinery, at buyer's option," is so inconsistent with this main feature of a c. i. f. contract as to alter or defeat it or may be given effect without altering or changing the nature of the contract.

[2] The American Sugar Refining Company, the plaintiff, is a large concern having a place of business in Boston, and a refinery at South Boston on Fort Point Channel in Boston Harbor. The defendant is also a large concern having been engaged in business in Boston for many years, and having its principal place of business in Cambridge. The parties were not strangers to one another, nor to the conditions surrounding them. The contract is on a printed form gotten out by the American Sugar Refining Company and evidently for its particular use in the purchase of sugar from abroad. It unquestionably knew that it had a refinery at Boston and because of this, in drafting the form of contract, inserted the provision calling for "delivery of the sugar to be made at a customary safe wharf or refinery, as directed by the buyer," contemplating that the occasion would arise when it would want sugar consigned to it at Boston delivered either at such wharf or at its refinery there.

The document shows that while many provisions in the printed form were stricken out, the delivery clause, with others, was retained. The retention of this clause makes it evident that the parties did so for a purpose; that while they probably understood that delivery to the carrier at the port of shipment would, under the other provisions of the contract, pass the title in the sugar to the buyer, they did not intend that the defendant (seller) should be relieved from providing in the contract of shipment (charter party or bill of lading) for the delivery of the sugar at the port of destination on its arrival there, but that it should be bound to do so; and the delivery clause was retained for this purpose. To hold otherwise would be to read out of the contract a provision that is not inconsistent with the other provisions of the contract, but in harmony with them. This is not an unusual provision in a c. i. f. contract, as will be seen from an examination of the case of Armour & Co. v. Sherburne (C. C. A.) 300 F. 81, 82, where the contract contains a like provision as to delivery, except that the words "or refinery" are omitted. It does not prevent the

title passing on delivery of the goods to the ship. It does not interfere with payment on presentation of proper shipping documents. It simply requires the defendant to provide for delivery at the port of destination in its shipping contract (bill of lading or charter party), and subjects it to damages arising therefrom in case it fails to do so. In many cases cited and relied upon by the defendant in its brief, the point of contention was as to the time the title to the goods shipped under a c. i. f. contract passed from seller to buyer, and who should bear the loss arising from their destruction during transportation, due to an act of war or some peril not covered by the insurance. In some of the cases the provision calling for payment against shipping documents was written into the printed form, and the form also contained a printed clause excusing the buyer in case of loss during transportation. It was there held that the printed clause excusing the buyer in case of loss was inconsistent with the one written in; that it was inconsistent with the title passing on delivery of the goods to the carrier, and this being so it should be rejected. But those cases are not applicable here for, as we have endeavored to point out, the provision as to delivery is not inconsistent with the title passing on delivery of the goods to the carrier. It is beneficial to the buyer to be relieved from the annoyance attending delivery at the port of discharge, as the facts in this case demonstrate. The seller can meet this obligation by requiring the carrier in the contract of shipment to perform it. The buyer undoubtedly bears the expense in the price charged, and it is of no concern of the seller that the goods may be lost before reaching the port of discharge, for the title has passed and the buyer must rely upon his insurance for reimbursement.

Then, again, the contract calls upon the seller to provide insurance "from shore to shore, including risk of lighters at ports of loading and discharge." This provision shows that the parties contemplated that lighters might be required at the port of discharge and would be if the seller saw fit to ship the sugar on a steamer more than 50 feet wide and the buyer exercised its option to have delivery made at its refinery where ships of more than that width could not go; and it would seem that it was because of this that it was expressly stipulated that the insurance required to be procured by the seller should cover the risk of transportation on the lighters as well as on the steamers. The attention of the parties must have been called particularly to the insurance clause of the

contract for in this clause of the printed form was a blank space for the insertion of the name of the party upon whom it might be agreed the burden should rest of procuring the insurance, which at the time the contract was made was filled by the insertion of the word "seller." The contract, therefore, shows that the seller, not only took the burden of delivering the sugar at the refinery by steamer or lighter, whichever was necessary, but the burden of providing insurance to cover the risk due to transporting the sugar upon the lighters as well as upon the steamers. Being of the opinion that this is the reasonable construction of the contract, and that the defendant broke the contract by failing to provide in the shipping contracts (bills of lading) for delivery at the refinery in case the plaintiff exercised its option of having delivery made there, and in procuring shipping contracts imposing wharfage or berthing charges upon the consignee, we think that the plaintiff is entitled to recover the lighterage charges, amounting to $11,444.55, with interest; the wharfage or berthing charges, amounting to $1,223.85, with interest; the landing or stevedore charge, amounting to $4,448.35, with interest; the coopering charges on ship and on dock, the trucking charges on wharf, and the expense of piling on wharf, all amounting to $654.05, with interest—as these charges were the direct result of its failure in the particulars above named. The item of $316.98 claimed to have been paid to cover risk during transportation on lighters is denied. The evidence fails to show that the seller did not obtain and provide insurance to cover this risk.

The contention that under the custom of the port of Boston, the plaintiff, being the consignee of the major portion of the Boston cargo on each of the steamers, had the same right to designate the wharf at which delivery should be made, as it would have had if such a stipulation had been written into the bills of lading, is without foundation as there is no evidence of any such custom in the case. The defendant had the choice of steamers, and, if it desired to perform its agreement by delivery from steamer, it could have done so by selecting steamers not over 50 feet wide; and if it did not so desire, then by delivery from lighters, which method the contract shows it knew might be necessary, depending upon its choice of steamers and plaintiff's designation of the refinery. Under the terms of this contract the plaintiff's right to designate the refinery as the place of delivery was not dependent upon the defendant's choice of steamers of 50 feet or less in width. The plaintiff's designation of the refinery did not render delivery there impossible. One of the contemplated methods was still open to the defendant—the one employed by the plaintiff in which the greater part of the charges here in question were incurred.

We do not find it necessary to discuss in detail the defendant's remaining assignments of error. It takes nothing by them.

The case is remanded to the District Court, with directions to enter judgment for the plaintiff in accordance with this opinion, with costs in this court in No. 2056 to the plaintiff in error, and in No. 2057 to the defendant in error.