## COMPAÑIA GENERAL DE TABACOS DE FILIPINAS v. COLLECTOR OF INTERNAL REVENUE.

No. 335.   Argued March 1, 1929.—Decided April 8, 1929.

*Mr. Lawrence H. Cake*, with whom *Messrs. Francis W. Clements, Clyde A. Dewitt, Eugene A. Perkins*, and *Wm. C. Brady* were on the brief, for petitioner.

*Mr. William Cattron Rigby,* Judge Advocate, with whom *Messrs. Edward A. Kreger,* Judge Advocate General, U. S. A., and *Delfin Jaranilla,* Attorney General of the Philippine Islands, were on the brief, for respondent.

MR. JUSTICE STONE delivered the opinion of the Court.

Petitioner, a Spanish corporation, brought suit in the Court of First Instance of the City of Manila, to recover income taxes alleged to have been illegally exacted. Judgment for petitioner was reversed by the Supreme Court of the Philippine Islands. Vol. XXVI, Philippine Official Gazette, No. 65, May 31, 1928, p. 1712. This Court granted certiorari October 22, 1928, 278 U. S. 591, under § 7 of the Act of February 13, 1925, c. 229, 43 Stat. 936, 940.

The tax was assessed under § 10 of the Philippine Income Tax Law of March 7, 1919, Act 2833, 14 Pub. Laws, P. I. 221, as amended by Act 2926, March 20, 15 Pub. Laws, P. I. 260, which imposed a tax of 3% annually ". . . upon the total net income received in the preceding calendar year from all sources within the Philippine Islands by every corporation . . . organized . . . under the laws of any foreign country . . ." The case was tried on an agreed statement of facts and the question presented is whether the profit or income, upon which the tax now in question was assessed, was received from "sources within the Philippine Islands" within the meaning of the statute.

The stipulated facts are: That petitioner, a foreign corporation, was licensed to do business in the Philippine Islands and there maintained its principal office and did most of its business; that it owned in the Islands various sugar and oil mills and tobacco factories and was there engaged in buying, selling and exporting these products; that, acting through its Philippine branch, petitioner from time to time during 1922 exported from the Philippine

Islands to the United States tobacco, sugar, copra and cocoanut oil, produced, manufactured or purchased by it in the Philippine Islands; that this merchandise ". . . was sold in the United States by the agency therein of the plaintiff's Philippine branch, the sale being subject to confirmation and absolute control as to price and other terms and conditions thereof, by the plaintiff's Philippine branch; and that from such transactions . . . the plaintiff made a profit . . . ," which was ". . . accounted for by the plaintiff on its books of account kept in the Philippine Islands as earnings made by and accruing to the Philippine branch . . ." It was this net profit on which the tax was levied.

Petitioner insists that, as the stipulation recites that the merchandise was "sold" in the United States, the profit derived from the sales was not from sources within the Philippine Islands and was, therefore, not subject to the tax. Section 10 of the Philippine Act is substantially similar to the corresponding section of the United States Revenue Act of September 8, 1916, c. 463, § 10, 39 Stat. 756, 765, and, in support of its position, petitioner cites opinions of the Attorney General of the United States ruling that a profit made by a foreign corporation from the sale in other countries, of merchandise produced or purchased in the United States was not taxable income " from sources within the United States " under the latter Act, and the similar provisions of the Revenue Acts of 1917, October 3, 1917, c. 63, § 1206, 40 Stat. 300, 333, and of 1918, February 24, 1919, c. 18, § 233, 40 Stat. 1057, 1077. See opinions of the Attorney General of January 21, 1924, 34 Ops. A. G. 93, and of November 3, 1920, 32 Ops. A. G. 336. These opinions were accepted and applied by Treasury Decision 3576, Cum. Bull. III–1–211, and Treasury Decision 3111, 4 Cum. Bull. 280. See also *Birkin* v. *Commissioner*, 5 B. T. A. 402; *Appeal of Yokohama Ki-Ito Kwaisha, Ltd.*, 5 B. T. A. 1248; *Billwiller* v.

*Commissioner,* 11 B. T. A. 841; *R. J. Dorn & Co.* v. *Commissioner,* 12 B. T. A. 1102, O. D. 651, 3 Cum. Bull. 265.

While the stipulation states that the merchandise was "sold" in the United States by petitioner's agency there, this statement cannot be taken without qualification; it must be read with the limitation immediately following, that such sales were "subject to confirmation and absolute control as to price and other terms and conditions" by petitioner's Philippine branch. It does not appear whether the confirmation was, in each case, given by the Philippine branch direct to the buyer or was otherwise the final act consummating the sales within the Philippine Islands, or whether, as the trial court and petitioner seem to have assumed, it was a mere approval or ratification of the negotiations had by petitioner's American agent, and authority to him to confirm or otherwise complete the sales in the United States. Certainly, if the former, the final acts of petitioner making effective the sales, which were the source of the profit, took place in the Philippine Islands as an incident to and part of its business conducted there. See *Holder* v. *Aultman,* 169 U. S. 81, 89; *Lloyd Thomas Co.* v. *Grosvenor,* 144 Tenn. 349; *Charles A. Stickney Co.* v. *Lynch,* 163 Wis. 353; *Shuenfeldt* v. *Junkermann,* 20 Fed. 357.

If, in fact, the sales were thus made in the Philippine Islands, we think it unimportant whether the merchandise sold was exported before or after its sale; it could not be seriously contended, and indeed petitioner does not contend, that a profit derived from such transactions would not be subject to the tax. For, in such a case, the entire transaction resulting in a profit, with the exception of the negotiations in the United States preceding the sale, would have taken place in the Philippines. Instead, petitioner asks us to construe the stipulation so as to bring it within the ruling of the Attorney General applied to a state of facts where every act effecting the sale took place

outside the taxing jurisdiction. The ambiguous phraseology of the stipulation failing to disclose precisely how the business was done, we may not speculate as to its actual character. See *Cochran* v. *United States*, 254 U. S. 387, 393.

The burden is on him who seeks the recovery of a tax already paid to establish those facts which show its invalidity. *United States* v. *Anderson*, 269 U. S. 422, 428; *Fidelity Title Co.* v. *United States*, 259 U. S. 304, 306. Further, in the absence of a clear showing of error, this Court should be slow to reverse the judgment of a territorial court on questions of fact or of local law: *Villanueva* v. *Villanueva*, 239 U. S. 293, 298; *Fox* v. *Haarstick*, 156 U. S. 674, 679. For the reason indicated, the stipulation here does not sustain the burden resting on petitioner.

We need not consider petitioner's contention that the taxing act, when applied to sales outside the Philippine Islands, conflicts with the " equal protection " clause of the Philippine Organic Law. This argument presupposes that the sales were so made, an assumption which, as already stated, we cannot make.

*Affirmed.*