COMMISSIONER OF INTERNAL REVE-
NUE v. EAST COAST OIL CO., S. A.*
No. 7829.

Circuit Court of Appeals, Fifth Circuit.
Aug. 7, 1936.

Robert N. Anderson, Sewall Key, and Berryman Green, Sp. Assts. to Atty. Gen., Robert H. Jackson, Asst. Atty. Gen., and Bruce A. Low, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., for petitioner.

George L. Buland, Ben C. Dey, and Charles L. Minor, all of New York City, and Victor Leovy, of New Orleans, La., for respondent.

Before FOSTER, SIBLEY, and WALKER, Circuit Judges.

FOSTER, Circuit Judge.

This is a petition by the Commissioner of Internal Revenue to reverse a decision of the Board of Tax Appeals. It appears that the commissioner assessed income and profits taxes against East Coast Oil Company, S. A., hereafter referred to as the company, for the years 1919, 1920, and 1921, totaling some $487,957. On petition of the company to the board the ruling of the commissioner was reversed and the board determined there was no deficiency. The question presented for decision is whether profits derived from sales of crude petroleum by the company was income derived from sources within the United States which is taxable, or was derived from sources without the United States, which is not, under the provisions of section 233 (b) of the Revenue Acts of 1918 and 1921 (40 Stat. 1077, 42 Stat. 254). We may briefly review the material facts and refer to the opinion of the board (31 B. T. A. 558) for a more complete statement of them.

East Coast Oil Company, S. A., is a corporation organized under the laws of Mexico, dealing in crude petroleum and having agents in the United States for the negotiation of sales. The profits sought to be taxed arose from sales of oil to parties in the United States through these agents, under contracts for future delivery, payment to be made to the company's agent in the United States after delivery. Some of the contracts provided for delivery f. o. b., others for delivery c. i. f. All the oil sold was produced in Mexico, part by the company and the balance of it purchased. All the oil was delivered to ocean carriers at the company's wharf in Tampico, Mexico. The c. i. f. contracts provided for ultimate delivery at points in the United States. The contracts stipulated that the oil should be merchantable, gravity 10 to 14 degrees Baume, sediment and water not to exceed 2 per cent. at 60 degrees F. The contracts contained a provision that the oil should be inspected, tested, and gauged by representatives of both parties at the place of delivery.

*Writ of certiorari denied 57 S. Ct. 234, 81 L. Ed. ——.

The initials f. o. b. and c. i. f. in sales contracts have a well-known meaning. The meaning of f. o. b. is that the goods are to be delivered to the carrier by the seller, free of cost to the buyer, and the buyer then pays the freight to destination and the insurance premium, if any. In a c. i. f. contract delivery is made to the carrier by the seller, without cost to the buyer, and the seller also pays the freight and insurance premium. It is well settled that under either form of contract title to the goods passes from the seller to the buyer on delivery of the goods to the carrier and delivery to the buyer of the bill of lading and other documents essential to show the sale. Cf. Thames & Mersey Ins. Co. v. U. S., 237 U. S. 19, 35 S.Ct. 496, 59 L.Ed. 821, Ann.Cas.1915D, 1087.

The commissioner admits that it is the general rule that title passes with delivery to the carrier, unless the contract of sale provides to the contrary. He contends that the contracts were modified by the provision for inspection and gauging of the oil at the place of delivery and title did not pass until the oil reached the points in the United States to which consigned. The commissioner also urges other provisions of the contract relative to their suspension or nonexecution as modifying the general rule, but they are immaterial as we are dealing with completed transactions.

It is an implied condition in all contracts of sale that the buyer shall have the right to inspect and measure the goods before paying for them. If the seller had shipped oil not up to specifications, there would have been no delivery at all under the contract, and neither would there have been taxable income if the shipment was rejected. We do not consider the provisions for inspection and gauging took the contracts out of the general rule. Louisville & Nashville R. Co. v. U. S., 267 U.S. 395, 45 S.Ct. 233, 69 L.Ed. 678; American Sugar Ref. Co. v. Page & Shaw (C.C.A.) 16 F.(2d) 662.

It is further contended by the commissioner that as the sales were negotiated in the United States and payment was made here, the income was derived from sources within the United States. Reliance is had upon the case of Compania General v. Collector, 279 U.S. 306, 49 S. Ct. 304, 73 L.Ed. 704. The board considered that case but did not find it controlling. It appears from the opinion of the board that prior to that decision, which was in April, 1929, the uniform construction of the Treasury Department had been consistent with the decision of the board in this case. The just cited case arose under the provisions of the Philippine Income Tax Law of March 7, 1919, § 10, Act 2833, 14 Pub. Laws P.I. 221, as amended by Act 2926, § 7, 15 Pub.Laws P.I. 260, which taxed income derived in the Philippines. The tax involved was assessed against a Spanish corporation doing business in the Philippine Islands. It exported to the United States from the Philippines tobacco, sugar, copra, and coconut oil, produced, manufactured, or purchased by it in the Philippines. The product was sold in the United States by an agency of the corporation, but the sale was subject to confirmation, with absolute control as to prices and other terms and conditions, by the corporation's agency in the Philippines. The Supreme Court held that the entire transaction resulting in a profit, with the exception of negotiations in the United States preceding the sale, took place in the Philippines, and therefore the transactions were taxable under the Philippine law. We agree with the board that the decision does not support the ruling of the commissioner in this case. In fact, it tends to support the decision of the board as on the facts shown the profit taxed was derived from sources in the Philippines.

In this case the important question is when and where were the profits earned. The company is a Mexican corporation, necessarily domiciled in that country. The property sold was produced in Mexico. The contracts provided for firm sales. No profit resulted from the mere execution of the contracts. The oil was delivered to the buyer in Mexico. The title passed to the buyer in Mexico. When title passed the profit was earned in Mexico. Collection of the price in the United States was incidental and did not earn the profit.

We agree with the conclusion of the board that the taxes were unlawfully assessed on income derived from sources without the United States.

The petition is denied, and the decision of the Board of Tax Appeals is affirmed.

WALKER, Circuit Judge, concurred in the disposition of this case, but died before the opinion was handed down.