NO. 07-09-0086-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

FEBRUARY 9, 2010

_____


JESSIE R. ROMERO, APPELLANT

V.


SCOGGIN-DICKEY CHEVROLET-BUICK, INC., APPELLEE

_____


FROM THE 237th DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2007–538,473; HONORABLE SAM MEDINA, JUDGE

_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.


**MEMORANDUM OPINION**


Appellant, Jessie R. Romero, appeals from a judgment rendered against Appellee, Scoggin-Dickey Chevrolet-Buick, Inc., following a bench trial of Romero's breach of contract claim. Presenting a single issue, Romero asserts the trial court erred by finding Scoggin-Dickey had a right to inspect and reject Romero's trade-in vehicles after the

parties executed a contract wherein he agreed to trade in two vehicles as a part of the purchase price of a 2006 Silverado pickup. We affirm.

## Background

On December 23, 2006, Romero went to the Scoggin-Dickey dealership in Lubbock, Texas, and sought to purchase a 2006 Silverado pickup from Fred Morales. Romero proposed to purchase the pickup by assigning the dealership the factory rebates, supplying two trade-in vehicles (a 2003 Mitsubishi Montero SP and a 2002 Chevrolet Silverado pickup), and paying the cash difference. At the time of the negotiations, Romero did not have the proposed trade-in vehicles on the lot for inspection by Scoggin-Dickey.

After negotiating a value for the trade-in vehicles, Romero and Morales signed a contract order wherein Scoggin-Dickey agreed to sell Romero the 2006 Silverado pickup for $21,888.[1] In return, Romero agreed to trade in two vehicles having a combined net value of $15,000,[2] assign factory rebates totaling $3,000, and pay $4,333.52 in cash.

---

[1]The contract order contained the following provision:

Purchaser agrees that this Order includes all of the terms and conditions on both the face and reverse side hereof, that this Order cancels and supersedes any prior agreement and as of the date hereof comprises the complete and exclusive statement of the terms of the agreement relating to the subject matters covered hereby. . . .

[2]The value of the Montero was estimated at $8,000 and the value of the 2002 Silverado pickup was estimated at $7,000. The negotiated value of the trade-in vehicles represented 68.5% of the total purchase price of the 2006 Silverado pickup and 79.4% of the total purchase price less rebates.

Romero paid the cash, assigned the rebates, and took possession of the 2006 Silverado pickup. At that time, Romero did not deliver the trade-in vehicles to Scoggin-Dickey, nor did Scoggin-Dickey transfer title to the 2006 Silverado pickup to Romero. Subsequently, Romero showed Morales the location of the Montero. After several weeks passed, Romero informed Morales that the 2002 Silverado pickup was located at a body shop. The pickup was not in running condition and was eventually towed by wrecker to Scoggin-Dickey.

After inspecting the trade-in vehicles, Scoggin-Dickey determined the Montero and 2002 Silverado pickup had little, or no, commercial value.[3] Thereafter, Scoggin-Dickey took back the 2006 Silverado pickup and made two settlement offers to Romero pertaining to a partial refund of his down payment. Romero rejected the offers and filed suit.

Following a one-day bench trial, the trial court concluded, as a matter of law, that Scoggin-Dickey had a right to inspect the trade-in vehicles under section 2.513 of the Texas Business and Commerce Code and, upon inspection, had validly exercised their right to reject the vehicles tendered by Romero. The trial court further found, as a matter of law, that no contract was perfected between the parties; title to the 2006 Silverado pickup

---

[3]Romero, a former car dealer with thirty years experience, testified that, at the time the contract order was executed, he represented to Scoggin-Dickey that the two vehicles were an even trade for the new 2006 Silverado pickup. John Zwiacher, owner of Scoggin-Dickey, testified that, upon inspection, neither vehicle had any commercial value because both vehicles were severely damaged, critical parts were missing, replacement body parts from older vehicles had been installed, tires were worn out, and the 2002 pickup's body was not completely straightened. David Brown, an expert, estimated the 2002 pickup had a value of $1300. Tom Hayes, owner of Hayes Motor Company, testified the condition of the 2002 pickup was "extremely rough" and "had been hit hard." Hayes testified the Montero's condition was "actually rougher than the pickup" and had been rolled. He also estimated neither vehicle had any value, commercial, or otherwise.

3

never passed from the dealership to Romero; the parties should be returned to the position held by each just prior to the transaction, except for allowable expenses; and Scoggin-Dickey had a right to possession of the 2006 Silverado pickup.

The trial court filed its judgment ordering Scoggin-Dickey to pay Romero $4,133.52 (his original down payment less allowable expenses), $330.00 in attorney's fees and court costs. Romero was ordered to remove the two trade-in vehicles from Scoggin-Dickey's lot within thirty days of the judgment. Thereafter, Romero filed this appeal.

## Discussion

By a single issue, Romero asserts the trial court erred in its finding that Scoggin-Dickey had a right to inspect and reject the trade-in vehicles after the contract order had been executed. In support, Romero argues that: (1) Scoggin-Dickey had no legal right to inspect and/or reject the trade-in vehicles after the contract order was executed; (2) after inspection, Scoggin-Dickey did not have a right to reject the vehicles tendered; (3) Scoggin-Dickey unconditionally sold the 2006 Silverado pickup to Romero when the contract order was executed; and (4) Romero's damages should be increased to the market value of the 2006 Silverado pickup, $21,888.00.

### I.     Standard of Review

We review *de novo* a trial court's conclusions of law and uphold them on appeal if the judgment can be sustained on any legal theory supported by the evidence. *BMC*

4

*Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). *See Milton M. Cooke Co. v. First Bank and Trust,* 290 S.W.3d 297, 302 (Tex.App.–Houston [1st Dist.] 2009, no pet.). Further, in a bench trial, the trial court, as fact finder, is the sole judge of the credibility of witnesses. *Munters Corp. v. Swissco-Young Industries, Inc.*, 100 S.W.3d 292, 296 (Tex.App.–Houston [1st Dist.] 2002, pet. dism'd). The judge may take into consideration all the facts and surrounding circumstances in connection with the testimony of each witness and accept or reject all or any part of that testimony. *Id.* Where the testimony on an issue is conflicting, we accord due deference to the trial court. *Id.* at 299.

## II. Right to Inspect

Motor vehicles are included in the broad definition of "goods" as defined in the Texas version of the Uniform Commercial Code.[4] *First National Bank of El Campo, TX v. Buss,* 143 S.W.3d 915, 920 (Tex.App.–Corpus Christi 2004, pet. denied). And, unless the parties agree otherwise, a buyer has a right to inspect goods identified to a contract for sale at any reasonable place and time and in any reasonable manner prior to payment or acceptance of the goods. § 2.513. This is an implied condition in all contracts for sale. *Commissioner of Internal Revenue v. East Coast Oil Co., S.A.*, 85 F.2d 322, 323 (5th Cir. 1936), *cert. denied*, 299 U.S. 608, 57 S.Ct. 234, 81 L.Ed. 449 (1936). *See Owl Trading Co. v. United Appliance Co.*, 246 S.W.2d 342, 344 (Tex.Civ.App.–Galveston 1952, no writ). Moreover, if

---

[4]"'Goods' means all things which are moveable at the time of identification of the contract for sale." Tex. Bus. & Com. Code Ann. § 2.105(a) (Vernon 2009). For convenience, subsequent citations to provisions of the Texas Business and Commerce Code will be simply as "§ ___" or "section ___."

the goods are non-conforming, the buyer also has "an absolute right to reject." *Id.*[5] Thus, the trial court correctly held, as a matter of law, that Scoggin-Dickey had a right to inspect Romero's trade-in vehicles to verify ownership, make, model, and value, even after the contract order was executed. If the trade-in vehicles did not conform to their description in the contract order, Scoggin-Dickey had a right to reject any non-conforming vehicle.

Further, contrary to Romero's assertion, execution of the contract order did not constitute a "sale" because there was no present transfer of ownership of the 2006 Silverado pickup to Romero or a transfer of ownership of the two trade-in vehicles in full payment of the purchase price to Scoggin-Dickey. *See* § 2.106(a) ("A 'sale' consists in the passing of title from the seller to the buyer for a price."). Rather, the contract order was a *contract for sale*, i.e., "a contract to sell goods at a future time"; *id.,* or conditional sale. *Meyer v. Hardware Mut. Cas. Co.*, 383 S.W.2d 625, 627 (Tex.Civ.App.–Austin 1964, no writ) (a sale "wherein possession of the property is delivered to the buyer but title is reserved in the seller until the fulfillment of a condition"). Romero had no legal right to compel Scoggin-Dickey to assign or transfer title to the 2006 Silverado pickup simply because the contract order was executed. *Alamo Cas. Co. v. William Reeves & Co.,* 258 S.W.2d 211, 214 (Tex.Civ.App. 1953, no writ) ("A test of true ownership as fixed by Texas courts is set forth as being a legal right to compel the assignment and transfer of the

---

[5]"Goods or conduct including any part of performance are 'conforming' or conform to the contract when they are in accordance with the obligations under the contract." § 2.106(b).

certificate of title to a vehicle.").[6]   Under these facts, the trial court could conclude that the parties intended that vehicle ownership pass in the future when the balance of the purchase price was paid to Scoggin-Dickey, i.e., Romero tendered two trade-in vehicles conforming to their description in the contract order.  *See Park Cities Ltd. Partnership v. Transportation Funding Corp.,* 131 S.W.3d 654, 660 (Tex.App.–Dallas 2004, pet. denied); *David v. Gonzales*, 235 S.W.2d 221, 222 (Tex.Civ.App.–Fort Worth 1950, writ dism'd).

Romero and Scoggin-Dickey were both buyers and sellers.  Romero was selling his two trade-in vehicles to Scoggin-Dickey and, in return, the dealership was selling the 2006 Silverado pickup to Romero.  *See* § 2.304(a) ("If [the price] is payable in whole or in part in goods each party is seller of the goods which he is to transfer.").  The trial court was correct in finding, as a matter of law, that the contract for sale was not completed until Scoggin-Dickey received two trade-in vehicles that conformed to their values identified in the contract order.  *See Lange v. Interstate Sales Co.*, 166 S.W. 900, 901 (Tex.Civ.App. –San Antonio 1914, writ ref'd) ("When an individual purchases a car sight unseen, they have "the undoubted right, the contract being executory, to inspect the car and see if it met the contract specifications.").

Romero fails to cite any statutory or case law in support of his assertion that the trial court's judgment should be reformed to increase his damages to the market value of the

---

[6]Although, under Texas law, non-compliance with the Certificate of Title Act does not override a clear showing of a valid and complete transfer of ownership of a vehicle; *Najarian v. David Taylor Cadillac*, 705 S.W.2d 809, 811-12 (Tex.App.–Houston [1st Dist.] 1986, no writ), the facts of this cause do not establish a valid and complete transfer of the ownership of any vehicle.

2006 Silverado pickup and award additional attorney fees.  Accordingly, this contention is insufficiently briefed and, therefore, waived.  *See White v. Baptist St. Anthony's Hosp.*, 188 S.W.3d 373, 374 (Tex.App.—Amarillo 2006, pet. denied) (*citing* Tex. R. App. P. 38.1(h)); *Jordan v. Jefferson County*, 153 S.W.3d 670, 676 (Tex.App.—Amarillo 2004, pet. denied). Romero's single issue is overruled.

**Conclusion**

The trial court's judgment is affirmed.

Patrick A. Pirtle
Justice
