NO. 07-09-0086-CV

 IN THE COURT OF APPEALS

 FOR THE SEVENTH DISTRICT OF TEXAS

 AT AMARILLO

 PANEL C

 FEBRUARY 9, 2010

 ______________________________

 JESSIE R. ROMERO, APPELLANT

 V.

 SCOGGIN-DICKEY CHEVROLET-BUICK, INC., APPELLEE

 _________________________________

 FROM THE 237th DISTRICT COURT OF LUBBOCK COUNTY;

 NO. 2007(538,473; HONORABLE SAM MEDINA, JUDGE

 _______________________________

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

 MEMORANDUM OPINION

 Appellant, Jessie R. Romero, appeals from a judgment rendered against
Appellee, Scoggin-Dickey Chevrolet-Buick, Inc., following a bench trial of
Romero(s breach of contract claim. Presenting a single issue, Romero
asserts the trial court erred by finding Scoggin-Dickey had a right to
inspect and reject Romero(s trade-in vehicles after the parties executed a
contract wherein he agreed to trade in two vehicles as a part of the
purchase price of a 2006 Silverado pickup. We affirm.

 Background

 On December 23, 2006, Romero went to the Scoggin-Dickey dealership in
Lubbock, Texas, and sought to purchase a 2006 Silverado pickup from Fred
Morales. Romero proposed to purchase the pickup by assigning the
dealership the factory rebates, supplying two trade-in vehicles (a 2003
Mitsubishi Montero SP and a 2002 Chevrolet Silverado pickup), and paying
the cash difference. At the time of the negotiations, Romero did not have
the proposed trade-in vehicles on the lot for inspection by Scoggin-Dickey.

 After negotiating a value for the trade-in vehicles, Romero and
Morales signed a contract order wherein Scoggin-Dickey agreed to sell
Romero the 2006 Silverado pickup for $21,888.[1] In return, Romero agreed
to trade in two vehicles having a combined net value of $15,000,[2] assign
factory rebates totaling $3,000, and pay $4,333.52 in cash.

 Romero paid the cash, assigned the rebates, and took possession of the
2006 Silverado pickup. At that time, Romero did not deliver the trade-in
vehicles to Scoggin-Dickey, nor did Scoggin-Dickey transfer title to the
2006 Silverado pickup to Romero. Subsequently, Romero showed Morales the
location of the Montero. After several weeks passed, Romero informed
Morales that the 2002 Silverado pickup was located at a body shop. The
pickup was not in running condition and was eventually towed by wrecker to
Scoggin-Dickey.

 After inspecting the trade-in vehicles, Scoggin-Dickey determined the
Montero and 2002 Silverado pickup had little, or no, commercial value.[3]
Thereafter, Scoggin-Dickey took back the 2006 Silverado pickup and made two
settlement offers to Romero pertaining to a partial refund of his down
payment. Romero rejected the offers and filed suit.

 Following a one-day bench trial, the trial court concluded, as a
matter of law, that Scoggin-Dickey had a right to inspect the trade-in
vehicles under section 2.513 of the Texas Business and Commerce Code and,
upon inspection, had validly exercised their right to reject the vehicles
tendered by Romero. The trial court further found, as a matter of law,
that no contract was perfected between the parties; title to the 2006
Silverado pickup never passed from the dealership to Romero; the parties
should be returned to the position held by each just prior to the
transaction, except for allowable expenses; and Scoggin-Dickey had a right
to possession of the 2006 Silverado pickup.

 The trial court filed its judgment ordering Scoggin-Dickey to pay
Romero $4,133.52 (his original down payment less allowable expenses),
$330.00 in attorney(s fees and court costs. Romero was ordered to remove
the two trade-in vehicles from Scoggin-Dickey(s lot within thirty days of
the judgment. Thereafter, Romero filed this appeal.

 Discussion

 By a single issue, Romero asserts the trial court erred in its finding
that Scoggin-Dickey had a right to inspect and reject the trade-in vehicles
after the contract order had been executed. In support, Romero argues
that: (1) Scoggin-Dickey had no legal right to inspect and/or reject the
trade-in vehicles after the contract order was executed; (2) after
inspection, Scoggin-Dickey did not have a right to reject the vehicles
tendered; (3) Scoggin-Dickey unconditionally sold the 2006 Silverado pickup
to Romero when the contract order was executed; and (4) Romero(s damages
should be increased to the market value of the 2006 Silverado pickup,
$21,888.00.

 I. Standard of Review

 We review de novo a trial court(s conclusions of law and uphold them
on appeal if the judgment can be sustained on any legal theory supported by
the evidence. BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794
(Tex. 2002). See Milton M. Cooke Co. v. First Bank and Trust, 290 S.W.3d
297, 302 (Tex.App.(Houston [1st Dist.] 2009, no pet.). Further, in a bench
trial, the trial court, as fact finder, is the sole judge of the
credibility of witnesses. Munters Corp. v. Swissco-Young Industries, Inc.,
100 S.W.3d 292, 296 (Tex.App.(Houston [1st Dist.] 2002, pet. dism(d). The
judge may take into consideration all the facts and surrounding
circumstances in connection with the testimony of each witness and accept
or reject all or any part of that testimony. Id. Where the testimony on
an issue is conflicting, we accord due deference to the trial court. Id.
at 299.

 II. Right to Inspect

 Motor vehicles are included in the broad definition of (goods( as
defined in the Texas version of the Uniform Commercial Code.[4] First
National Bank of El Campo, TX v. Buss, 143 S.W.3d 915, 920 (Tex.App.(Corpus
Christi 2004, pet. denied). And, unless the parties agree otherwise, a
buyer has a right to inspect goods identified to a contract for sale at any
reasonable place and time and in any reasonable manner prior to payment or
acceptance of the goods. ( 2.513. This is an implied condition in all
contracts for sale. Commissioner of Internal Revenue v. East Coast Oil
Co., S.A., 85 F.2d 322, 323 (5th Cir. 1936), cert. denied, 299 U.S. 608, 57
S.Ct. 234, 81 L.Ed. 449 (1936). See Owl Trading Co. v. United Appliance
Co., 246 S.W.2d 342, 344 (Tex.Civ.App.(Galveston 1952, no writ). Moreover,
if the goods are non-conforming, the buyer also has (an absolute right to
reject.( Id.[5] Thus, the trial court correctly held, as a matter of law,
that Scoggin-Dickey had a right to inspect Romero(s trade-in vehicles to
verify ownership, make, model, and value, even after the contract order was
executed. If the trade-in vehicles did not conform to their description in
the contract order, Scoggin-Dickey had a right to reject any non-conforming
vehicle.

 Further, contrary to Romero(s assertion, execution of the contract
order did not constitute a (sale( because there was no present transfer of
ownership of the 2006 Silverado pickup to Romero or a transfer of ownership
of the two trade-in vehicles in full payment of the purchase price to
Scoggin-Dickey. See ( 2.106(a) ((A (sale( consists in the passing of title
from the seller to the buyer for a price.(). Rather, the contract order
was a contract for sale, i.e., (a contract to sell goods at a future time(;
id., or conditional sale. Meyer v. Hardware Mut. Cas. Co., 383 S.W.2d 625,
627 (Tex.Civ.App.(Austin 1964, no writ) (a sale (wherein possession of the
property is delivered to the buyer but title is reserved in the seller
until the fulfillment of a condition(). Romero had no legal right to
compel Scoggin-Dickey to assign or transfer title to the 2006 Silverado
pickup simply because the contract order was executed. Alamo Cas. Co. v.
William Reeves & Co., 258 S.W.2d 211, 214 (Tex.Civ.App. 1953, no writ) ((A
test of true ownership as fixed by Texas courts is set forth as being a
legal right to compel the assignment and transfer of the certificate of
title to a vehicle.().[6] Under these facts, the trial court could
conclude that the parties intended that vehicle ownership pass in the
future when the balance of the purchase price was paid to Scoggin-Dickey,
i.e., Romero tendered two trade-in vehicles conforming to their description
in the contract order. See Park Cities Ltd. Partnership v. Transportation
Funding Corp., 131 S.W.3d 654, 660 (Tex.App.(Dallas 2004, pet. denied);
David v. Gonzales, 235 S.W.2d 221, 222 (Tex.Civ.App.(Fort Worth 1950, writ
dism(d).

 Romero and Scoggin-Dickey were both buyers and sellers. Romero was
selling his two trade-in vehicles to Scoggin-Dickey and, in return, the
dealership was selling the 2006 Silverado pickup to Romero. See ( 2.304(a)
((If [the price] is payable in whole or in part in goods each party is
seller of the goods which he is to transfer.(). The trial court was
correct in finding, as a matter of law, that the contract for sale was not
completed until Scoggin-Dickey received two trade-in vehicles that
conformed to their values identified in the contract order. See Lange v.
Interstate Sales Co., 166 S.W. 900, 901 (Tex.Civ.App. (San Antonio 1914,
writ ref(d) ((When an individual purchases a car sight unseen, they have
(the undoubted right, the contract being executory, to inspect the car and
see if it met the contract specifications.().

 Romero fails to cite any statutory or case law in support of his
assertion that the trial court(s judgment should be reformed to increase
his damages to the market value of the 2006 Silverado pickup and award
additional attorney fees. Accordingly, this contention is insufficiently
briefed and, therefore, waived. See White v. Baptist St. Anthony(s Hosp.,
188 S.W.3d 373, 374 (Tex.App.(Amarillo 2006, pet. denied) (citing Tex. R.
App. P. 38.1(h)); Jordan v. Jefferson County, 153 S.W.3d 670, 676
(Tex.App.(Amarillo 2004, pet. denied). Romero(s single issue is overruled.

 Conclusion

 The trial court(s judgment is affirmed.

 Patrick A. Pirtle
 Justice
-----------------------
 [1]The contract order contained the following provision:

 Purchaser agrees that this Order includes all of the terms and
 conditions on both the face and reverse side hereof, that this Order
 cancels and supersedes any prior agreement and as of the date hereof
 comprises the complete and exclusive statement of the terms of the
 agreement relating to the subject matters covered hereby. . . .

 [2]The value of the Montero was estimated at $8,000 and the value of
the 2002 Silverado pickup was estimated at $7,000. The negotiated value of
the trade-in vehicles represented 68.5% of the total purchase price of the
2006 Silverado pickup and 79.4% of the total purchase price less rebates.

 [3]Romero, a former car dealer with thirty years experience, testified
that, at the time the contract order was executed, he represented to
Scoggin-Dickey that the two vehicles were an even trade for the new 2006
Silverado pickup. John Zwiacher, owner of Scoggin-Dickey, testified that,
upon inspection, neither vehicle had any commercial value because both
vehicles were severely damaged, critical parts were missing, replacement
body parts from older vehicles had been installed, tires were worn out, and
the 2002 pickup(s body was not completely straightened. David Brown, an
expert, estimated the 2002 pickup had a value of $1300. Tom Hayes, owner of
Hayes Motor Company, testified the condition of the 2002 pickup was
(extremely rough( and (had been hit hard.( Hayes testified the Montero(s
condition was (actually rougher than the pickup( and had been rolled. He
also estimated neither vehicle had any value, commercial, or otherwise.

 [4]((Goods' means all things which are moveable at the time of
identification of the contract for sale.( Tex. Bus. & Com. Code Ann. (
2.105(a) (Vernon 2009). For convenience, subsequent citations to
provisions of the Texas Business and Commerce Code will be simply as ((
___( or (section ___.(

 [5](Goods or conduct including any part of performance are
(conforming( or conform to the contract when they are in accordance with
the obligations under the contract.( ( 2.106(b).

 [6]Although, under Texas law, non-compliance with the Certificate of
Title Act does not override a clear showing of a valid and complete
transfer of ownership of a vehicle; Najarian v. David Taylor Cadillac, 705
S.W.2d 809, 811-12 (Tex.App.(Houston [1st Dist.] 1986, no writ), the facts
of this cause do not establish a valid and complete transfer of the
ownership of any vehicle.