NO.
07-09-0086-CV

 

                                                   IN
THE COURT OF APPEALS

 

                                       FOR THE
SEVENTH DISTRICT OF TEXAS

 

                                                                 AT
AMARILLO

 

                                                                     PANEL
C

 

FEBRUARY 9, 2010

 

                                            ______________________________

 

 

                                              JESSIE R. ROMERO, APPELLANT

 

                                                                            V.

 

 

                        SCOGGIN-DICKEY
CHEVROLET-BUICK, INC., APPELLEE

 

                                         _________________________________

 

 

                      FROM THE 237th DISTRICT
COURT OF LUBBOCK COUNTY;

 

                           NO. 2007B538,473; HONORABLE SAM MEDINA, JUDGE

 

                                           _______________________________

 

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

 

 

                                                      MEMORANDUM
OPINION

 

 

Appellant, Jessie R. Romero, appeals from a judgment
rendered against Appellee, Scoggin-Dickey Chevrolet-Buick, Inc., following a
bench trial of Romero=s breach of contract claim.  Presenting a single issue, Romero asserts the
trial court erred by finding Scoggin-Dickey had a right to inspect and reject
Romero=s trade-in vehicles after the parties
executed a contract wherein he agreed to trade in two vehicles as a part of the
purchase price of a 2006 Silverado pickup. 
We affirm.  

                                                                  Background

On December 23, 2006, Romero went to the Scoggin-Dickey
dealership in Lubbock, Texas, and sought to purchase a 2006 Silverado pickup
from Fred Morales.  Romero proposed to
purchase the pickup by assigning the dealership the factory rebates, supplying
two trade-in vehicles (a 2003
Mitsubishi Montero SP and a 2002 Chevrolet Silverado pickup), and paying the cash difference.  At the time of the negotiations, Romero did
not have the proposed trade-in vehicles on the lot for inspection by
Scoggin-Dickey.

After negotiating a value for the trade-in vehicles,
Romero and Morales signed a contract order wherein Scoggin-Dickey agreed to
sell Romero the 2006 Silverado pickup for $21,888.[1]  In return, Romero agreed to trade in two
vehicles having a combined net value of $15,000,[2]
assign factory rebates totaling $3,000, and pay $4,333.52 in cash. 

Romero paid the cash, assigned the rebates, and took
possession of the 2006 Silverado pickup. 
At that time, Romero did not deliver the trade-in vehicles to Scoggin-Dickey,
nor did Scoggin-Dickey transfer title to the 2006 Silverado pickup to
Romero.  Subsequently, Romero showed
Morales the location of the Montero. 
After several weeks passed, Romero informed Morales that the 2002
Silverado pickup was located at a body shop. 
The pickup was not in running condition and was eventually towed by
wrecker to Scoggin-Dickey.

After inspecting the trade-in vehicles, Scoggin-Dickey
determined the Montero and 2002 Silverado pickup had little, or no, commercial value.[3]  Thereafter, Scoggin-Dickey took back the 2006
Silverado pickup and made two settlement offers to Romero pertaining to a
partial refund of his down payment. 
Romero rejected the offers and filed suit.

Following a one-day bench trial, the trial court
concluded, as a matter of law, that Scoggin-Dickey had a right to inspect the
trade-in vehicles under section 2.513 of the Texas Business and Commerce Code
and, upon inspection, had validly exercised their right to reject the vehicles
tendered by Romero.  The trial court
further found, as a matter of law, that no contract was perfected between the
parties; title to the 2006 Silverado pickup never passed from the dealership to
Romero; the parties should be returned to the position held by each just prior
to the transaction, except for allowable expenses; and Scoggin-Dickey had a
right to possession of the 2006 Silverado pickup.  

The trial court filed its judgment ordering
Scoggin-Dickey to pay Romero $4,133.52 (his original down payment less
allowable expenses), $330.00 in attorney=s fees and court costs.  Romero was ordered to remove the two trade-in
vehicles from Scoggin-Dickey=s lot within thirty days of the
judgment.  Thereafter, Romero filed this
appeal.

Discussion

By a single issue, Romero asserts the trial court erred
in its finding that Scoggin-Dickey had a right to inspect and reject the
trade-in vehicles after the contract order had been executed.  In support, Romero argues that: (1)
Scoggin-Dickey had no legal right to inspect and/or reject the trade-in
vehicles after the contract order was executed; (2) after inspection,
Scoggin-Dickey did not have a right to reject the vehicles tendered; (3)
Scoggin-Dickey unconditionally sold the 2006 Silverado pickup to Romero when
the contract order was executed; and (4) Romero=s damages should be increased to the
market value of the 2006 Silverado pickup, $21,888.00. 

I.          Standard of Review

We review de novo a trial court=s conclusions of law and uphold them
on appeal if the judgment can be sustained on any legal theory supported by the
evidence.  BMC
Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002).  See Milton M. Cooke Co.
v. First Bank and Trust, 290 S.W.3d 297, 302 (Tex.App.BHouston [1st
Dist.] 2009, no pet.).  Further, in a bench trial, the trial court,
as fact finder, is the sole judge of the credibility of witnesses.  Munters Corp. v.
Swissco-Young Industries, Inc., 100 S.W.3d 292, 296 (Tex.App.BHouston [1st
Dist.] 2002, pet. dism=d). 
The judge may take into consideration all the facts and surrounding
circumstances in connection with the testimony of each witness and accept or
reject all or any part of that testimony. 
Id.  Where the testimony on
an issue is conflicting, we accord due deference to the trial court.  Id. at 299.

II.         Right to
Inspect   

Motor vehicles are included in the broad definition of Agoods@ as defined in the Texas version of
the Uniform Commercial Code.[4]  First National Bank
of El Campo, TX v. Buss, 143 S.W.3d 915, 920 (Tex.App.BCorpus Christi 2004,
pet. denied).  And, unless
the parties agree otherwise, a buyer has a right to inspect goods identified to
a contract for sale at any reasonable place and time and in any reasonable
manner prior to payment or acceptance of the goods.  ' 2.513.  This is an implied condition in all
contracts for sale.  Commissioner of
Internal Revenue v. East Coast Oil Co., S.A., 85 F.2d 322, 323 (5th
Cir. 1936), cert. denied, 299 U.S. 608, 57 S.Ct. 234, 81 L.Ed. 449 (1936).  See
Owl Trading Co. v. United Appliance Co., 246 S.W.2d 342,
344 (Tex.Civ.App.BGalveston 1952, no
writ).  Moreover, if the goods are non-conforming,
the buyer also has Aan absolute right to reject.@ 
Id.[5]  Thus, the trial court correctly held, as a
matter of law, that Scoggin-Dickey had a right to inspect Romero=s trade-in vehicles to verify ownership,
make, model, and value, even after the contract order was executed.  If the trade-in vehicles did not conform to
their description in the contract order, Scoggin-Dickey had a right to reject
any non-conforming vehicle.

Further, contrary to Romero=s assertion, execution of the contract
order did not constitute a Asale@ because there was no present transfer
of ownership of the 2006 Silverado pickup to Romero or a transfer of ownership
of the two trade-in vehicles in full payment of the purchase price to
Scoggin-Dickey.  See ' 2.106(a) (AA >sale= consists in the passing of title from the seller to
the buyer for a price.@).  Rather, the contract order was a contract
for sale, i.e., Aa contract to sell goods at a future
time@; id., or conditional
sale.  Meyer v. Hardware Mut. Cas. Co., 383 S.W.2d 625, 627 (Tex.Civ.App.BAustin 1964, no writ) (a sale Awherein possession of the property is delivered to
the buyer but title is reserved in the seller until the fulfillment of a
condition@).  Romero had no legal right to compel
Scoggin-Dickey to assign or transfer title to the 2006 Silverado pickup simply
because the contract order was executed. 
Alamo Cas. Co. v. William Reeves & Co., 258
S.W.2d 211, 214 (Tex.Civ.App. 1953, no writ) (AA test
of true ownership as fixed by Texas courts is set forth as being a legal right
to compel the assignment and transfer of the certificate of title to a vehicle.@).[6]   Under these facts, the trial court could
conclude that the parties intended that vehicle ownership pass in the future
when the balance of the purchase price was paid to Scoggin-Dickey, i.e., Romero
tendered two trade-in vehicles conforming to their description in the contract
order.  See Park
Cities Ltd. Partnership v. Transportation Funding Corp., 131 S.W.3d 654,
660 (Tex.App.BDallas 2004, pet. denied); David v. Gonzales,
235 S.W.2d 221, 222 (Tex.Civ.App.BFort Worth 1950, writ dism=d).

            Romero and Scoggin-Dickey were both
buyers and sellers.  Romero was selling
his two trade-in vehicles to Scoggin-Dickey and, in return, the dealership was
selling the 2006 Silverado pickup to Romero. 
See ' 2.304(a) (AIf [the price] is payable in whole or
in part in goods each party is seller of the goods which he is to transfer.@). 
The trial court was correct in finding, as a matter of law, that the
contract for sale was not completed until Scoggin-Dickey received two trade-in
vehicles that conformed to their values identified in the contract order.  See Lange v. Interstate Sales Co., 166
S.W. 900, 901 (Tex.Civ.App. BSan Antonio 1914, writ ref=d) (AWhen an individual purchases a car
sight unseen, they have Athe undoubted right, the contract
being executory, to inspect the car and see if it met the contract
specifications.@). 

Romero fails to cite any statutory or case law in support
of his assertion that the trial court=s judgment should be reformed to
increase his damages to the market value of the 2006 Silverado pickup and award
additional attorney fees.  Accordingly,
this contention is insufficiently briefed and, therefore, waived.  See White v. Baptist St. Anthony=s Hosp., 188 S.W.3d 373,
374 (Tex.App.CAmarillo 2006, pet. denied) (citing
Tex. R. App. P. 38.1(h)); Jordan v. Jefferson County, 153 S.W.3d
670, 676 (Tex.App.CAmarillo 2004, pet. denied).  Romero=s single issue is overruled.


                                                                   Conclusion

The trial court=s judgment is affirmed.  

 

 

Patrick A. Pirtle

      Justice











[1]The contract order
contained the following provision:

 

Purchaser agrees that this Order includes all of the
terms and conditions on both the face and reverse side hereof, that this Order
cancels and supersedes any prior agreement and as of the date hereof comprises
the complete and exclusive statement of the terms of the agreement relating to
the subject matters covered hereby. . . .





[2]The value of the Montero was
estimated at $8,000 and the value of the 2002 Silverado pickup was estimated at
$7,000.  The negotiated value of the
trade-in vehicles represented 68.5% of the total purchase price of the 2006
Silverado pickup and 79.4% of the total purchase price less rebates.  





[3]Romero, a former car dealer with
thirty years experience, testified that, at the time the contract order was
executed, he represented to Scoggin-Dickey that the two vehicles were an even
trade for the new 2006 Silverado pickup. 
John Zwiacher, owner of Scoggin-Dickey, testified that, upon inspection,
neither vehicle had any commercial value because both vehicles were severely
damaged, critical parts were missing, replacement body parts from older
vehicles had been installed, tires were worn out, and the 2002 pickup=s body was not completely straightened.  David Brown, an expert, estimated the 2002
pickup had a value of $1300. Tom Hayes, owner of Hayes Motor Company, testified
the condition of the 2002 pickup was Aextremely rough@ and Ahad been hit hard.@ 
Hayes testified the Montero=s condition was Aactually rougher than the pickup@ and had been rolled.  He also estimated neither vehicle had any
value, commercial, or otherwise.   





[4]A>Goods’ means all things which are
moveable at the time of identification of the contract for sale.@ 
Tex. Bus. & Com. Code Ann. ' 2.105(a) (Vernon 2009). 
For convenience, subsequent citations to provisions of the Texas
Business and Commerce Code will be simply as A' ___@ or Asection ___.@





[5]AGoods or conduct including any part
of performance are >conforming= or conform to the contract when
they are in accordance with the obligations under the contract.@ 
' 2.106(b).





[6]Although, under Texas law,
non-compliance with the Certificate of Title Act does not override a clear
showing of a valid and complete transfer of ownership of a vehicle; Najarian
v. David Taylor Cadillac, 705 S.W.2d 809, 811-12 (Tex.App.BHouston [1st Dist.]
1986, no writ), the facts of this cause do not establish a valid and complete
transfer of the ownership of any vehicle.